**CAPITAL TRANSIT CO. v. UNITED STATES et al.**

**ARLINGTON & FAIRFAX MOTOR TRANSP. CO. v. SAME.**

**WASHINGTON, VIRGINIA & MARYLAND COACH CO., Inc., v. SAME.**

**STATE CORPORATION COMMISSION OF VIRGINIA v. SAME.**

Nos. 23420–23423.

District Court of the United States for the District of Columbia.

May 1, 1944.

52

E. Barrett Prettyman, F. G. Awalt, Raymond Sparks, and G. Thomas Dunlop, all of Washington, D. C., for plaintiff Capital Transit Co.

Franklin K. Lane, Hugh H. Obear, and Wilmer A. Hill, all of Washington, D. C., for plaintiff Arlington & Fairfax Motor Trans. Co.

J. Ninian Beall and Brashears, Beall & Beasley, all of Washington, D. C., for plaintiff Washington, Virginia & Maryland Coach Co., Inc.

Robert E. Quirk, of Washington, D. C., for intervening complainant Alexandria Barcroft & Washington Transit Co.

Frederick G. Hamley, of Washington, D. C., and H. E. Ketner, of Richmond, Va., for State Corporation Commission of Virginia.

Daniel W. Knowlton, Chief Counsel, Interstate Commerce Commission, of Washington, D. C., for defendant Interstate Commerce Commission.

Robt. L. Pierce, Sp. Asst. to Atty. Gen., Dept. of Justice, Wendell Berge, Asst. Atty. Gen., and Edward M. Curran, U. S. Dist. Atty. for the District of Columbia, of Washington, D. C., for the United States.

Richard H. Field, Acting Gen. Counsel, David F. Cavers, Asst. Gen. Counsel, and Harry R. Booth, Utilities Counsel, all of Washington, D. C., and Max G. Baron, of St. Louis, Mo., for OPA and Economic Stabilization Director, as amicus curiae.

Myron C. Cramer, Maj. Gen., U. S. A., The Judge Advocate General for the Secretary of War, Mastin G. White, Col., J.A.G.D., Chief, Litigation Division, and Paul S. Davis, Capt. J.A.G.D., all of Washington, D. C., for the War Department (intervenor).

Everett A. Mathews, Lt., U.S.N.R., for Navy Department.

Before MILLER, Associate Justice, United States Court of Appeals, District of Columbia, and BAILEY and LETTS, Associate Justices, District Court of the United States for the District of Columbia.

BAILEY, District Judge.

Each of the above-named plaintiffs has brought an action to set aside an order of the Interstate Commerce Commission of January 18, 1944, as extended by an order of February 14, 1944. These actions have been consolidated for trial.

The orders of the Commission were made. pursuant to an investigation instituted at the request or complaint of the Secretary of War, concurred in by the Secretary of the Navy, into the reasonableness and lawfulness of fares for the transportation of passengers between all points in the District of Columbia on the one hand, and points on the Virginia side of the Potomac River to and including the Pentagon Building, the Navy Arlington Annex, the Army Air Force Annex at Gravelly Point, and the Washington National Airport, on the other hand.

The Pentagon is located adjacent to U. S. Route No. 1, nearly two miles south of the Virginia end of the Memorial Bridge across the Potomac River, and about 1.5 miles west of the Virginia end of the 14th Street Highway Bridge. The Navy Annex is about two miles south of the Virginia end of the Memorial Bridge, and about one mile west of the Pentagon Building. It is reached from the Memorial Bridge over Arlington Ridge Road, which does not run by the Pentagon. The Army Annex is on the Mt. Vernon Memorial Highway, about 1.75 miles south of the Virginia end of the Highway Bridge, and the Airport is approximately 0.5 mile beyond.

The Transit Company furnishes regular urban and suburban streetcar and bus service for the transportation of passengers in the District and nearby Maryland, and bus service between the District and the Pentagon. The Virginia Lines transport passengers by bus between points in Virginia in the general vicinity of the District, and between designated terminals in the downtown business section of the District, on the one hand, and points in Virginia, on the other hand. All four serve the Pentagon. The Navy Annex is served by the

Alexandria Line and the Arlington Line. The Army Annex and the Airport are served only by the Alexandria Line. All of the plaintiffs operate lines over both the Memorial Bridge and the Highway Bridge. The routes over which plaintiffs operate in the District were prescribed by the Public Utilities Commission of the District of Columbia.

After hearings the Commission undertook to fix fares between all points of the District of Columbia, on the one hand, including those served by the electric street railways of the Capital Transit Company, and the Pentagon, the Navy Annex, the Army Annex, and the Airport, on the other hand, including joint fares between the Capital Transit Company and the Virginia Companies. Each of the plaintiffs claims that the Commission was without jurisdiction to make the order complained of.

The Interstate Commerce Commission Act, Section 203(b), (7a), and (8), 49 U. S.C.A. § 303 (b) (7a), and (8) excepts from the jurisdiction of the Commission certain municipal zones. This section provides:

"(7a) * * * nor, unless and to the extent that the Commission shall from time to time find that such application is necessary to carry out the national transportation policy declared in this Act, shall the provisions of this part, except the provisions of section 204 relative to qualifications and maximum hours of service of employees and safety of operation or standards of equipment apply to: (8) The transportation of passengers or property in interstate or foreign commerce wholly within a municipality or between contiguous municipalities or within a zone adjacent to and commercially a part of any such municipality or municipalities, except when such transportation is under a common control, management, or arrangement for a continuous carriage or shipment to or from a point without such municipality, municipalities, or zone, and provided that the motor carrier engaged in such transportation of passengers over regular or irregular route or routes in interstate commerce is also lawfully engaged in the intrastate transportation of passengers over the entire length of such interstate route or routes in accordance with the laws of each State having jurisdiction; * * *."

All the operations in question are performed within the territorial limits of the District of Columbia municipal zone prescribed by the Interstate Commerce Commission, Washington District of Columbia Commercial Zone, 3 M.C.C. 243. The first question that arises is the meaning of the phrase "lawfully engaged in the intrastate transportation of passengers over the entire length of such interstate route or routes in accordance with the laws of each state having jurisdiction." The Commission contends that the Capital Transit Company is not engaged in intrastate transportation in Virginia and that the Virginia companies are engaged in only limited intrastate transportation in the District of Columbia. But the transportation from the Virginia line to the Pentagon is intrastate, and is subject to regulation by the State Corporation Commission of Virginia, and the Virginia companies not only do local business in Virginia but, while their intrastate business in the District of Columbia may be said to be limited, their transportation in the District of Columbia is regulated by the Utilities Commission of the District of Columbia. The fact that the Capital Transit Company does not pick up and discharge passengers at many stops in Virginia does not prevent its transportation in Virginia from being intrastate. As stated by the Commission:

"This is urban, mass transportation between points in the District and points in Virginia just beyond the District line, and is the same in all characteristics as transportation between residential areas of the District and commercial and Government establishments in the District."

The transportation involved here is not interurban but, as the Commission says, urban transportation and, as such, it was not, in our opinion, the intention of Congress to confer jurisdiction on the Commission to regulate fares for transportation of this nature.

Section 216(e) of the Motor Carrier Act, 49 U.S.C.A. § 316(e), contains this proviso:

"Provided, however, That nothing in this part [the Motor Carrier Act is Part II of the Interstate Commerce Act, 49 U.S.C.A. § 301 et seq.] shall empower the Commission to prescribe, or in any manner regulate, the rate, fare, or charge for intrastate transportation, or for any service connected therewith, for the purpose of removing discrimination against interstate commerce or for any other purpose whatever."

The effect of the Commission's ruling is to regulate fares for intrastate transportation for it provides for a fare over a large intrastate system of transportation under the guise of regulating fares for what is substantially urban transportation between the District of Columbia and points in nearby Virginia.

The Commission says:

"All that the Commission's order does here is to extend the District of Columbia rate base and the District of Columbia fares of the Capital Transit Company both cash and token to cover this Virginia transportation."

Indeed, the order of the Commission makes clear that its basic theory is that these Virginia installations should be treated, for transportation purposes, as part of the District.

■ As we are of the opinion, as above stated, that the Commission has misconstrued the statutes in holding that the various plaintiffs are not "also lawfully engaged in the intrastate transportation of passengers over the entire length of such interstate route or routes in accordance with the laws of each state having jurisdiction," it is not necessary to decide whether the Commission has jurisdiction over fares over the electric street railway lines of the Capital Transit Company, which constitute about half the entire mileage operated by the street cars and buses of the Capital Transit Company in the District of Columbia.

■ The Commission, however, after taking the view that it had jurisdiction by virtue of its construction of the Act of Congress set out, added:

"In any event, we are of the opinion and find application of the Act to that transportation is, in the language of section 203 (b) (7a) necessary to carry out the national transportation policy."

The National Transportation Policy, as defined in the section of the act quoted, is as follows:

"It is hereby declared to be the national transportation policy of the Congress to provide for fair and impartial regulation of all modes of transportation subject to the provisions of this Act, so administered as to recognize and preserve the inherent advantages of each; to promote safe, adequate, economical, and efficient service and foster sound economic conditions in transportation and among the several carriers; to encourage the establishment and maintenance of reasonable charges for transportation services, without unjust discriminations, undue preferences or advantages, or unfair or destructive competitive practices; to cooperate with the several States and the duly authorized officials thereof; and to encourage fair wages and equitable working conditions;—all to the end of developing, coordinating, and preserving a national transportation system by water, highway, and rail, as well as other means, adequate to meet the needs of the commerce of the United States, of the Postal Service, and of the national defense. * * *" Transportation Act of 1940, § 1, 49 U.S.C.A. note preceding section 301.

The Commission does not say, however, in what respect its order complies with the National Transportation Policy, nor does it make any findings to support its general conclusion that its order "is necessary" to carry out the National Transportation Policy.

In City of Yonkers v. United States, 320 U.S. 685, 689–692, 64 S.Ct. 327, 330:

"The Commission itself has noted that in the 'construction of these exclusion clauses great difficulty has been experienced, particularly in determining the roads properly classifiable as interurban electric railways.' Annual Report (1928), p. 80. That difficulty is apparent here by the division of opinion which exists in the Court whether this Yonkers branch is an 'interurban electric' railway which is 'operated as a part' of the New York Central system. § 1(22) [49 U.S.C.A. § 1 (22)]. As stated by Mr. Justice Brandeis in United States v. Idaho, 298 U.S. 105, 109, 56 S.Ct. 690, 692, 80 L.Ed. 1070, the determination of what is included within the exemption of § 1(22) involves a 'mixed question of fact and law.' Congress has not left that question exclusively to administrative determination; it has given the courts the final say. Id., 298 U.S. at page 109, 56 S.Ct. at page 692, 80 L.Ed. 1070. It is settled that the aid of the Commission need not be sought before the jurisdiction of a court is invoked to enjoin violations of the provisions in question. Texas & Pacific Ry. Co. v. Gulf, C. & S. F. Ry. Co., 270 U.S. 266, 46 S.Ct. 263, 70 L.Ed. 578. And the fact that the Commission fails to make a finding on this jurisdictional question obviously does not preclude the reviewing court from making that determination initially. But we

deem it essential in cases involving a review of orders of the Commission for the courts to decline to make that determination without the basic jurisdictional findings first having been made by the Commission.

" * * * In the application of the doctrine of the Shreveport [Houston, E. & W. T. R. Co. v. United States, 234 U.S. 342, 34 S.Ct. 833, 58 L.Ed. 1341] case, this Court has required the Commission to show meticulous respect for the interests of the States. It has insisted on a 'suitable regard to the principle that, whenever the federal power is exerted within what would otherwise be the domain of state power, the justification of the exercise of the federal power must clearly appear.' Florida v. United States, 282 U.S. 194, 211, 212, 51 S.Ct. 119, 124, 75 L.Ed. 291. In that case this Court set aside an intrastate rate order of the Commission because of the 'lack of the basic or essential findings required to support the Commission's order.' Id., 282 U.S. at page 215, 51 S.Ct. at page 125, 75 L.Ed. 291. The principle of the Florida case is applicable here. The question is not merely one of elaborating the grounds of decision and bringing into focus what is vague and obscure. See United States v. Chicago, M., St. P. & P. R. Co., 294 U.S. 499, 55 S.Ct. 462, 79 L.Ed. 1023. Cf. Securities & Exchange Commission v. Chenery Corp., 318 U.S. 80, 63 S.Ct. 454 [87 L.Ed. 626]. Here as in the Florida case the problem is whether the courts should supply the requisite jurisdictional findings which the Commission did not make and to which it even failed to make any reference.

" * * * The Congress has entrusted to the Commission the initial responsibility for determining through application of the statutory standards the appropriate line between the federal and state domains. Proper regard for the rightful concern of local interests in the management of local transportation facilities makes desirable the requirement that federal power be exercised only where the statutory authority affirmatively appears. The sacrifice of these legitimate local interests may be as readily achieved through the Commission's oversight or neglect (Illinois Commerce Commission v. Thomson, 318 U.S. 675, 63 S.Ct. 834 [87 L.Ed. 1075]) as by improper findings. The insistence that the Commission make these jurisdictional findings before it undertakes to act not only gives added assurance that the local interests for which Congress expressed its solicitude will be safe-guarded. It also gives to the reviewing courts the assistance of an expert judgment on a knotty phase of a technical subject.

"We are asked to presume that the Commission, knowing the limit of its authority, considered this jurisdictional question and decided to act because of its conviction that this branch line was not exempt by reason of § 1(22). But that is to deal too cavalierly with the Congressional mandate and with the local interests which are pressing for recognition. Where a federal agency is authorized to invoke an overriding federal power except in certain prescribed situations and then to leave the problem to traditional state control, the existence of federal authority to act should appear affirmatively and not rest on inference alone.

"This is not to insist on formalities and to burden the administrative process with ritualistic requirements. It entails a matter of great substance. It requires the Commission to heed the mandates of the Act and to make the expert determinations which are conditions precedent to its authority to act.

"We intimate no opinion on the merits of the controversy. For in absence of the requisite jurisdictional findings we think the order of the Commission should have been set aside."

Inasmuch, then, as we are of the opinion that the Commission had no jurisdiction, unless it be necessary to carry out the national transportation policy, and, as the Commission has made no findings to support that conclusion, the order of the Commission should be set aside.

It is unnecessary to pass upon other questions raised in the pleadings.

An order will be entered directing the defendant Interstate Commerce Commission to set aside the order of July 3, 1943, and perpetually enjoining its enforcement.