CAPITAL TRANSIT CO. v.
UNITED STATES et al.

ARLINGTON & FAIRFAX MOTOR
TRANSPORTATION CO. v.
SAME.

WASHINGTON, VIRGINIA & MARYLAND
COACH CO., Inc., v. SAME.

STATE CORPORATION COMMISSION OF
VIRGINIA v. SAME.

Civil Actions Nos. 23420–23423.

District Court of the United States for the
District of Columbia.

Aug. 25, 1944.

For former order, see 55 F.Supp. 51.

Robt. L. Pierce, Sp. Asst. to Atty. Gen., Wendell Berge, Asst. Atty. Gen., and Edward M. Curran, U. S. Dist. Atty., of Washington, D. C., for the United States.

Daniel W. Knowlton, Chief Counsel, of Washington, D. C., for Interstate Commerce Commission.

Myron C. Cramer, Maj. Gen. U. S. A., The Judge Advocate General for the Secretary of War, and Mastin G. White, Col., J.A.G.D., Chief, Litigation Div., both of Washington, D. C., and Thos. E. Sands, Jr., Lt. Col., Head Commerce Branch, Litigation Div., of Minneapolis, Minn., for War Department (intervenor) on behalf of defendants.

Martin Norr, Lt. U. S. N. R., Office of General Counsel, Navy, and Richard Salant, Lt. (jg), both of Washington, D. C., for Navy Department (intervenor) on behalf of defendants.

E. Barrett Prettyman, F. G. Awalt, Raymond Sparks, and G. Thomas Dunlop, all of Washington, D. C., for Capital Traction Co.

Franklin K. Lane, Hugh H. O'Bear, and Wilmer A. Hill, all of Washington, D. C., for Arlington & Fairfax Motor Transp. Co.

J. Ninian Beall and Brashears, Beall & Beasley, all of Washington, D. C., for Washington, Virginia & Maryland Coach Co., Inc.

Frederick G. Hamley, of Washington, D. C., and H. E. Ketner, of Richmond, Va., for State Corporation Commission of Virginia.

Robert E. Quirk, of Washington, D. C., for intervening complainant Alexandria, Barcroft & Washington Transit Co.

Before ARNOLD, Associate Justice, United States Court of Appeals, District of Columbia, and BAILEY and LETTS, Associate Justices, District Court of the United States for the District of Columbia, sitting as a statutory three-judge court.

BAILEY, Justice.

These causes have been heard on the motion of the various carriers to amend the order of this court entered on May 15, 1944, 55 F.Supp. 51, enjoining the enforcement of the order of the Interstate Commerce Commission of January 18, 1944, so as to provide for the issuance of an order enjoining the enforcement of a subsequent order of the Interstate Commerce Commission of June 12, 1944; and also a motion of the United States for a retrial of these causes and a modification of the order of this court of May 15, 1944.

At the hearing of the foregoing motion it was stipulated by all parties in open court that Justice THURMAN W. ARNOLD of the United States Court of Appeals of the District of Columbia might sit in lieu of

Justice JUSTIN MILLER who was absent from the District.

In its opinion and findings of fact of this court filed on May 1, 1944, the court held in substance that the Interstate Commerce Commission was without jurisdiction to make its order of January 18, for the reason that the carriers were engaged in intrastate commerce throughout the entire length of their lines and that the Interstate Commerce Commission had not made findings of fact sufficient to justify its conclusion that it had jurisdiction because its action was necessary to carry out the national transportation policy.

Without applying to this court for a modification of the order of this court of May 15, 1944, the Commission proceeded to reopen its hearings, to take further testimony, to make additional findings, and to enter a new order on June 12, 1944, which was, in effect, the same order that had been permanently enjoined by this court. Although it is rather difficult to understand the conduct of the Commission in undertaking to put into effect an order this court had enjoined, we have nevertheless taken into consideration the new report of the Commission and the evidence upon which it is based.

■ As to the first question whether the carriers are in intrastate commerce over the entire length of their lines, practically no additional evidence was introduced before the Commission. This court has already found that the Commission was in error in its conclusion of law upon the facts and it is unnecessary to discuss this question any further.

■ As to the new evidence and findings of fact upon which the Commission undertakes to conclude that it has jurisdiction because it "is necessary to carry out the national transportation policy," the Commission bases its conclusion chiefly on the finding that the employees of the Pentagon are dissatisfied with the fares charged by the carriers and the importance of the war work carried on at the Pentagon. As to the first ground, apart from the fact that the dissatisfaction of the employees with the fares charged by the carriers is ground for finding that their reduction is necessary to carry out the national transportation policy, there is a mere scintilla of evidence to support this finding. The Commission's findings were that many of the passengers to the Pentagon are low-salaried employees of the Government and that a representative group of them were dissatisfied with the fares. As to the latter finding, it clearly appears that the proportion of turnover of employees at the Pentagon did not exceed the average in government departments, and in only a very few instances did employees give the rate of fares as the cause of their dissatisfaction. .

It must be observed that there has been no raising of fares by the carriers whereby the national transportation policy has been affected.

■ As to the importance of the Pentagon in the prosecution of the War, Congress has not provided that the Commission could take jurisdiction merely because of the importance of transportation to or from a government agency. There must be more than this; it must appear that the war work of the government is materially affected and not merely that a small portion of the workers are dissatisfied with the rates of fare charged by the carriers.

We hold that the facts found by the Commission do not support its conclusion that its taking jurisdiction is necessary to the national transportation system.

The motion of the United States for a new trial should be overruled and the order of the Commission of June 12, 1944 be set aside and its enforcement permanently enjoined.

LETTS, Justice, concurs.

ARNOLD, Justice (dissenting).

This case arose out of a complaint by the Secretaries of War and the Navy concerning the fares charged by the Capital Transit Company and other companies engaged in carrying employees across the District Line to the Pentagon Building and other military installations in Virginia. After the complaint was received the Interstate Commerce Commission instituted its own investigation and held hearings. It finally ordered that the Capital Transit Company carry passengers to the Pentagon Building for a cash fare of 10¢ or a fare of 8⅓¢ if commutation tickets were purchased, and that a joint fare between the companies involved in this case be fixed at $1.60 for twelve one-way trips, including transfer privileges.

By a former decision of a three-judge court in these proceedings this order of the Commission was set aside. That court held (1) that the Commission had no jurisdiction to fix the rates or to establish joint

fares because the operations were wholly within the commercial zone designated by the Interstate Commerce Commission and there was intrastate transportation over the entire interstate lines;[1] and (2) that the Commission had made no findings to support its conclusion that its jurisdiction was necessary in the interests of the national transportation policy. After this decision the Commission held further hearings and made supplemental findings to the effect that the exercise of the Commission's jurisdiction was necessary in the national defense. It then issued a second order putting into effect the rates previously enjoined in this court. It is that second order which plaintiffs seek to enjoin in this case.

The opinion of the majority that the Commission has no jurisdiction to issue an order regulating the transportation in this case seems to me clearly in error. The statute plainly gives the Commission jurisdiction over the transportation of passengers in interstate or foreign commerce within a municipality or between contiguous municipalities or zones commercially a part of a municipality to the extent that the Commission shall find it necessary to carry out the national transportation policy declared in the Act. This explicitly covers transportation between the District of Columbia and the Pentagon Building in Virginia.

This national transportation policy which the Commission finds it necessary to carry out is defined by an amendment to the Interstate Commerce Act in 1940.[2] In so far as the policy relates to national defense the declared intention of Congress is to provide for a fair and impartial regulation of all modes of transportation "to promote safe, adequate, economical, and efficient service * * * to encourage the establishment and maintenance of reasonable charges * * * all to the end of developing, coordinating, and preserving a national transportation system * * * to meet the needs * * * of the national defense." The Commission has found in unequivocal terms that the regulation of fares from the District of Columbia to the general headquarters of the Army in the Pentagon Building in Virginia is necessary in the national defense. Unless these findings are arbitrary and unreasonable the jurisdiction of the Commission in this case is beyond question.

Even in the absence of evidence, judicial notice of the intimate connection of the work done at the Pentagon Building and the other installations with the operation of our armies in the field would seem sufficient support for the findings relating to the Commission's jurisdiction over the transportation of the thousands of employees who are part of our national military headquarters. But, in addition, we have the testimony of responsible Army and Navy executives, backed up by the opinions of the Secretaries of War and the Navy, that the Commission's regulation is necessary to the national defense. It is true that, for the most part, this testimony is opinion evidence. But, the factors which contribute morale and efficiency in the armed services can only be based upon opinion since they relate to the future operations. They can never be statistically proved. For a three-judge court, without experience in or responsibility for military organization, to impose its own ideas of whether federal regulation of military transportation is necessary in the national defense against the judgment of the men who are responsible for the morale and discipline of our armies is unwarranted in time of peace and reckless in time of war.

The informed opinion of such men is all we have to guide us in military matters. The testimony of those responsible for our military organization is unanimous that military efficiency requires unified federal regulation of the transportation of military personnel from the District of Columbia to general headquarters across the state line rather than the uncoordinated control by independent local commissions, none of which have jurisdiction over the entire route. Certainly this judgment seems reasonable on its face. Nothing in the record gives this court the slightest justification for disregarding it.

The reasoning on which the majority base their refusal to follow the testimony of military experts that the Commission's regulation was necessary in this case is based upon a peculiar interpretation of the word "necessary" as it is used in Section 303(b), 49 U.S.C.A. That section directs the Commission to apply the Act to interstate transportation within a municipal area "to the extent that the Commission shall from time to time find that such application is necessary to carry out the

---

[1] See 49 U.S.C.A. §§ 303(b) (7a) (8).

[2] 54 Stat. 899 (1940), 49 U.S.C.A. preceding Section 301.

national transportation policy." The majority hold that as a matter of law no necessity for federal regulation of military transportation can exist until it is evident "that the war work of the government is materially affected." In other words, it is never permissible for the Commission to regulate in order to plan for more efficient military transportation or to avoid future impairment of the .military operation. An uncoordinated system of regulation which in the opinion of military experts is dangerous to national defense must be permitted to continue until there is an actual breakdown in military transportation. The majority infer that such a breakdown must be serious because they lay stress on evidence that the present turnover of the employees of the Pentagon Building is no greater than the average in government departments and that dissatisfaction has not yet become general. It thus appears that average performance is all that our military command is entitled to strive for in time of. war and that the necessity' of regulation to promote the maintenance of reasonable rates, as described in the Act, cannot exist until military employees become so dissatisfied that in a time of crisis they begin to desert their posts in substantial numbers. In other words, before the Commission can attempt to perform its duty to promote reasonable rates in the interests of national defense the existing rates must be higher than the traffic will bear.

Nothing in the Act supports a construction so contradictory to common sense. The language in the Act that the Commission may regulate whenever it is necessary to encourage the establishment and maintenance of reasonable rates does not mean that it must withhold its hand until real harm has been done to the war effort. It is probably true that no measurable harm to the war effort will be occasioned by any rate, however excessive. It is the duty of the general staff to carry on in spite of, every difficulty and it is to be hoped that the personnel attached to military headquarters will be at their posts regardless of personal hardship. But the ability of our military command to carry on in the face of handicaps does not justify this court in denying the Commission an op-

portunity to make its task easier by following the mandate of the statute to encourage and maintain reasonable rates in aid of national defense.

Assuming the power to regulate, the question of whether the rates are confiscatory is a separate inquiry. However, nothing in the record supports the contention that there is confiscation in the Commission's order. According to the testimony, the average one-way trip involved from the District of Columbia to the Pentagon Building is 6.21 miles, less than half the maximum distance that a person may travel entirely within the District on a single 8⅓¢ token. Further testimony showed that the cost of the entire trip was .7.06¢, which is below the 10¢ cash fare and the 8⅓¢ commutation fare ordered by the Commission. As has been said in St. Joseph Stock Yards Co. v. United States:[3] "The established principle which guides the court in the exercise of its judgment on the entire case is that the complaining party carries the burden of making a convincing showing and that the court will not interfere with the exercise of the rate-making power unless confiscation is clearly established."

The only showing as to confiscation was made by the Capital Transit Company. This was done on the theory that the trip from the District Line to the Pentagon Building could be separated from the entire transportation and its cost separately assessed. This evidence is irrelevant because there is no justification for computing the cost of portions of the trip to the Pentagon Building separately. Under the Act the Commission has jurisdiction over the entire transportation. It must, therefore, consider it as a whole.

The other points raised by plaintiffs do not require extended discussion. It seems clear that the Commission's jurisdiction over the interstate carriage of passengers to the Pentagon Building includes the power to compel joint rates, to issue commutation tickets, or to make any other regulations necessary to carry out the transportation policy in the Interstate Commerce Act.

Finally, I believe that the court is in error in adhering to its former opinion

3 1936, 298 U.S. 38, 53, 56 S.Ct. 720, 726, 80 L.Ed. 1033. See also Darnell v. Edwards, 1917, 244 U.S. 564, 569, 37 S. Ct. 701, 61 L.Ed. 1317; Los Angeles Gas & Elec. Corp. v. Railroad Commission, 1933, 289 U.S. 287, 305, 53 S.Ct. 637, 77 L.Ed. 1180.

675

that the Commission had no jurisdiction over the interstate transportation involved in this case because the carriers were also lawfully engaged in the intrastate transportation of passengers over the entire length of the interstate route. The findings of the Commission seem to me sufficient to justify its assumption of jurisdiction in this case on the ground that the carriers affected by its order did no substantial intrastate business over the entire length of the interstate routes which were regulated. However, since the jurisdiction in aid of the national defense is so clear it is unnecessary to discuss this aspect of the case in detail. The order of the Commission should be sustained.