UNITED STATES ᴇᴛ ᴀʟ. *v.* CAPITAL TRANSIT CO.
ᴇᴛ ᴀʟ.

No. 663.   Argued April 30, 1945.—Decided May 28, 1945.

*Mr. Paul A. Freund,* with whom *Solicitor General Fahy* was on the brief, for the United States, and *Mr. Daniel W. Knowlton* for the Interstate Commerce Commission, appellants.

*Mr. Robert E. Quirk,* with whom *Messrs. G. Thomas Dunlop, E. Barrett Prettyman, F. G. Awalt, Raymond*

*Sparks, J. Ninian Beall, Hugh H. Obear, Franklin K. Lane* and *Wilmer A. Hill* were on the brief, for the Capital Transit Co. et al.; and *Mr. Henry E. Ketner* for the State Corporation Commission of Virginia, appellees.

*Messrs. Richmond B. Keech* and *Lloyd B. Harrison* filed a brief on behalf of the Public Utilities Commission of the District of Columbia, and *Mr. Frederick G. Hamley* on behalf of the National Association of Railroad and Utilities Commissioners, as *amici curiae,* urging affirmance.

MR. JUSTICE BLACK delivered the opinion of the Court.

A federal district court of three judges, one judge dissenting, set aside and permanently enjoined enforcement of an order of the Interstate Commerce Commission, 258 I. C. C. 559, on the ground that the findings were inadequate and that the Commission acted beyond its jurisdiction. 56 F. Supp. 670.[1]  The case is here on direct appeal. 28 U. S. C. § 345.

At the request of the Secretaries of War and the Navy, the Interstate Commerce Commission instituted an investigation into the reasonableness of the fares of four carriers, transporting passengers by bus between points in the District of Columbia and nearby points in the State of Virginia, where are located certain military and naval offices and installments employing more than 40,000 government workers.  More than half these workers live in the District so that the number of individual passenger trips to and from government work on the four motor lines is in excess of 31,000 per day.  The fares of the different lines were not identical for performance of substantially the same interstate transportation, and dissatisfaction of

[1] The district court had previously set aside a Commission order in the same case because of inadequate findings. 55 F. Supp. 51, 256 I. C. C. 769.  Thereafter the Commission heard additional evidence, made additional findings and entered the order here under review.

Army and Navy employees and officials had arisen on the ground that the charges of all the companies were excessive. The Commission, after a hearing, found some existing fares to be reasonable and others unreasonable. Its order required some of the rates to be reduced but permitted others to be increased.

A complicating factor arose from the distinctive type of business carried on by Capital Transit, one of the four companies transporting passengers to and from the Virginia government agencies. In addition to its District-Virginia bus service, it operated an urban and suburban transportation system, carrying passengers both by bus and streetcar. Since District terminals of all the bus companies were located in or adjacent to the central business sections, most government employees, in going to and returning from their work, were compelled to begin or complete their trips by utilizing buses or streetcars of Capital Transit. It accorded to its own bus and streetcar passengers, but denied to passengers on other Virginia buses, a privilege of transfers to and from some of its Virginia buses which lowered the total fares between District residences and their Virginia places of work. The Commission treated Transit Company's local bus and streetcar business as an integrated unit, and its findings, supported by evidence, show that its intra-company transfer practices were the equivalent of establishment by Transit of through interstate routes with joint rates to and from District residences to the Virginia points. Accordingly it ordered that analogous joint arrangements as to fares, including transfer privileges, be established between Transit and the other bus lines carrying passengers to and from Virginia government agencies. This, and other elements of the Commission order not passed on by the district court, were separately attacked here. In order that final disposition of the case may not be further delayed, we shall consider all questions argued before us.

*First.* It is argued that the Commission is without jurisdiction to regulate any of the District-Virginia transportation here involved. The argument emphasizes that the movement begins and ends in a single "community," all within an area which the Commission has previously recognized as the "commercial zone" of Washington. 3 M. C. C. 243. We are referred here to the holding of this Court in 1912 that a street-railway, carrying passengers between Omaha, Nebraska and Council Bluffs, Iowa, was "local," serving the use of a "single community," and was not the kind of "railroad" which the Interstate Commerce Act empowered the Commission to regulate. *Omaha Street R. Co.* v. *Interstate Commerce Comm'n*, 230 U. S. 324. Cf. *United States* v. *Village of Hubbard*, 266 U. S. 474, 479–480. The same principle, we are told, should exclude similar local bus operations. But this Court's decision in the *Omaha* case did not hold that Congress could not authorize the Commission to regulate movements that took place across state lines in a single local community. The power of Congress over such movements cannot be doubted. The *Omaha* case only decided that Congress had not granted such power to the Commission under the law as it then existed.

We must now test the Commission's power in this case by the provisions of a statute enacted subsequent to the *Omaha* case, *supra,* the Motor Carrier Act, 49 Stat. 543, under which the order here was entered. Section 203 (b) of that Act provides the controlling rule. It specifically defines the circumstances under which the Commission can regulate interstate activities which happen to take place in a single "commercial zone."

That Section, to a limited extent, excludes from the Commission's jurisdiction "The transportation of passengers or property in interstate or foreign commerce wholly within a municipality or between contiguous municipalities or within a zone adjacent to and commercially a part of

any such municipality or municipalities . . ." Other parts of the same Section authorize the Commission to apply the Act to these zone activities, however, if it finds that (1) "such application is necessary" to carry out the national transportation policy declared in the Act, or (2) if the carrier is not "engaged in . . . intrastate transportation of passengers over the entire length of such interstate route." The Commission held that the four bus companies came within both these exceptions and therefore were not excluded from its jurisdiction. We need not consider whether they came within the second exception, because of our conclusion that the Commission's findings justified its order under the first exception. Those findings were that it was necessary for the Commission to exercise its jurisdiction in order to carry out the Act's declared policy, "to encourage the establishment and maintenance of reasonable charges for transportation services, without unjust discriminations, . . . to the end of developing, coordinating, and preserving a national transportation system . . . adequate to meet the needs of the commerce of the United States, of the postal service, and of the national defense." 54 Stat. 899.

On its second hearing the Commission heard evidence from employees of the Army and Navy as to dissatisfaction with the fares. The Secretaries of both War and Navy made complaints concerning the situation produced by the rate structure. A number of witnesses testified as to the dissatisfaction of employees with the prevailing rates. If evidence was necessary to prove that unreasonably high rates were calculated to disturb the morale of workers forced to pay them, and thus to impair the national defense program, there can be no doubt but that the findings of the Commission were well supported. It is to be remembered that these were interstate rates for interstate travel which applied almost exclusively to workers engaged in national defense. Neither the District

nor Virginia had power adequately to regulate the rates; nor had they attempted to do so. Their regulation was rightfully a matter of concern to Army and Navy Departments charged with the serious responsibility of conducting a war. The employees worked in the very center of activities essential in that cause. Congress unequivocally reserved to the Commission power to regulate reasonableness of interstate rates in the light of the needs of national defense. The findings of the Commission on this issue were clear and complete, cf. *Yonkers* v. *United States,* 320 U. S. 685, and justified the Commission in exercising its jurisdiction.

*Second.* It is argued that the Commission exceeded its authority in prescribing joint fares between the Capital Transit Company and the other bus companies. This contention rests on two assumptions grounded upon the difference in the way the parties view the facts and the law governing them. The first argument of the companies is substantially the same as the one just rejected—that all of the Transit Company's operations, by both bus and streetcar, are purely local and therefore not subject to the Commission's jurisdiction. The second contention is this: Sections 216 (c) and (e) permit but do not require motor carriers to establish through routes and joint rates with other types of carriers; since the companies view the facts as failing to show that through routes or joint rates have voluntarily been established as to Transit's streetcars and the Virginia buses, they argue that the Commission cannot require their establishment. The Commission found, however, that Transit had voluntarily established through routes, and contends its finding has support in the evidence and consequently sustains its order. It also relies on its power under § 216 (e) to prescribe through rates for all segments of an interstate transportation carried on between motor carriers. This power it argues is broad enough to authorize an order for

joint rates for interstate carriage conducted by a company which, as it found this one did, uses streetcars and buses as an integrated unit in carrying out interstate transportation. We think that, under the facts and circumstances shown, the Commission's findings are not subject to attack and that it acted within its statutory authority in prescribing the through rates.

As previously pointed out, twice a day more than 15,000 government employees traveled between the Virginia agencies and their homes via one of the four bus systems. Most of them either went to or from these bus terminals from or to their homes over any of Transit's then available buses or streetcars. Their travel was at certain hours each day, at which special rush hour buses and cars were made available for their carriage. Their interstate journey to work actually began at the time they boarded a Transit bus or streetcar near their home, and actually ended when they alighted from the Virginia-going bus at their place of work. On returning from work their interstate journey actually began when they boarded a bus near their work and actually ended when they alighted from a Transit streetcar or bus near their home. True, their interstate trip was broken at the District termini of the Virginia buses, when they stepped from one vehicle to another. But in the commonly accepted sense of the transportation concept, their entire trip was interstate. *Baltimore & Ohio S. W. R. Co.* v. *Settle,* 260 U. S. 166. And the fact that, except as to Transit, they paid a combination of two rates, one for travel wholly within the District, and the other for travel between the District and Virginia, and the journey from their residences to Virginia and back again was taken in two segments, does not mean that the total interstate trip was not on a "through route." *Virginian R. Co.* v. *United States,* 272 U. S. 658, 666–667; *St. Louis S. W. R. Co.* v. *United States,* 245 U. S. 136, 139–140.

Moreover, Transit Company itself conducted its own traffic to and from Virginia and District residential points as one continuous journey. As previously noted, a Virginia worker could board its local bus or streetcar, ride to a District terminal of Transit's Virginia-bound bus, board it, and obtain the benefit of a transfer supplied by Transit. So also could Transit's passenger get the benefit of a transfer on the return journey home from work. Had Transit not owned the separate vehicles used in the transportation, these arrangements would have constituted "joint rates" for a "through route" within the statutory meaning of the term. As carried out by Transit the arrangements were the exact equivalent of transportation on a "through route" for a joint fare. Had Transit not owned the vehicles transporting the passengers on each leg of this interstate journey, it could not have established, consistently within the Interstate Commerce Act, joint rates with a particular Virginia bus line to the exclusion of its competitors, for the reason that one given a monopoly of through traffic could "soon be able to drive its competitors out of business." *United States* v. *Pennsylvania R. Co.,* 323 U. S. 612, 617. The Motor Carrier Act, which is part of the Interstate Commerce Act, need not be interpreted so as to permit the accomplishment of such a result.

Section 216 (e) expressly authorizes the Commission to declare unlawful any unreasonable, preferential, or prejudicial rule, classification, regulation or practice arising from any "individual or joint rate, fare, or charge, demanded, charged, or collected by any common carrier or carriers by motor vehicle or by any common carrier or carriers by motor vehicle in conjunction with any common carrier or carriers by railroad . . ." and to "prescribe the lawful rate, fare, or charge . . . thereafter to be observed . . ." We think that under the Commission's findings, supported by evidence, it did have power to declare these

rates unreasonable and unlawful as it did, and thereafter to prescribe the lawful rate to be charged for the interstate trip. This did not, as argued, constitute a regulation of intrastate commerce.

Other contentions urged by the carriers have been considered, but need not be discussed, since we are satisfied with the disposition made of them by the Interstate Commerce Commission. Finding no error in the order of the Commission, the judgment of the district court declining to enforce it is

*Reversed.*

MR. JUSTICE ROBERTS is of the opinion that the Commission had no jurisdiction of the fares in question, for the reasons set forth in the opinions below, 55 F. Supp. 51, and 56 F. Supp. 670. MR. JUSTICE REED and MR. JUSTICE DOUGLAS dissent from part Second of the opinion.