**CIVIL AERONAUTICS BOARD,**
Appellant,

v.

**FRIEDKIN AERONAUTICS, Inc., d/b/a**
**Pacific Southwest Airlines,**
Appellee.

**CIVIL AERONAUTICS BOARD,**
Appellant,

v.

**CALIFORNIA CENTRAL AIRLINES,**
Inc., Appellee.
**Nos. 14648, 14649.**

United States Court of Appeals
Ninth Circuit.
June 17, 1957.

————◆————

Stanley N. Barnes, Asst. Atty. Gen., Daniel M. Friedman, Sp. Asst. to the Atty. Gen., Robert L. Griffith, Chief, Office of Compliance, John F. Wright, Compliance Atty., Franklin M. Stone, Gen. Counsel, John H. Wanner, Associate Gen. Counsel, O. D. Ozment, Chief, Litigation & Research Division, Robert L. Park, Atty., Civil Aeronautics Board, Washington, D. C., Laughlin E. Waters, U. S. Atty., Los Angeles, Cal., for appellant.

Lewis T. Gardiner, Meserve, Mumper & Hughes, Los Angeles, Cal., for appellee Friedkin Aeronautics, Inc.

Alfred C. Ackerson, Quittner & Stutman, Los Angeles, Cal., Perry H. Taft, Atherton, Cal., for appellee, California Central Airlines, Inc.

**174**

Before HEALY and FEE, Circuit Judges, and WALSH, District Judge.

WALSH, District Judge.

Appellant filed in the court below separate complaints against appellees charging that, in violation of Section 401(a) of the Civil Aeronautics Act of 1938, as amended,[1] appellees had engaged in interstate air transportation [2] without a certificate of public convenience and necessity. In each complaint, Section 1007 of the Act [3] was invoked as authorizing

1. 49 U.S.C.A. § 481 which, in so far as it is material here, reads:
   "(a) No air carrier shall engage in any air transportation unless there is in force a certificate issued by the Board authorizing such air carrier to engage in such transportation * * *."

2. "Interstate air transportation" and other terms which are important in the case are defined in Section 1 of the Act, 49 U. S.C.A. § 401. The section reads, in part:
   "As used in this chapter, unless the context otherwise requires—
   * * * * * * *
   "(3) 'Air commerce' means interstate, overseas, or foreign air commerce or the transportation of mail by aircraft or any operation or navigation of aircraft within the limits of any civil airway or any operation or navigation of aircraft which directly affects, or which may endanger safety in, interstate, overseas, or foreign air commerce.
   * * * * * * *
   "(10) 'Air transportation' means interstate, overseas, or foreign air transportation or the transportation of mail by aircraft.
   * * * * *
   "(20) 'Interstate air commerce', 'overseas air commerce', and 'foreign air commerce', respectively, mean the carriage by aircraft of persons or property for compensation or hire, or the carriage of mail by aircraft, or the operation or navigation of aircraft in the conduct or furtherance of a business or vocation, in commerce between, respectively—
   "(a) a place in any State of the United States, or the District of Columbia, and a place in any other State of the United States, or the District of Columbia; or between places in the same State of the United States through the air space over any place outside thereof; or between places in the same Territory or possession of the United States, or the District of Columbia;
   "(b) a place in any State of the United States, or the District of Columbia, and any place in a Territory or possession of the United States; or between a place in a Territory or possession of the United States, and a place in any

other Territory or possession of the United States; and
   "(c) a place in the United States and any place outside thereof, whether such commerce moves wholly by aircraft or partly by aircraft and partly by other forms of transportation.
   "(21) 'Interstate air transportation', 'overseas air transportation', and 'foreign air transportation', respectively, mean the carriage by aircraft of persons or property as a common carrier for compensation or hire or the carriage of mail by aircraft, in commerce between, respectively—
   "(a) a place in any State of the United States, or the District of Columbia, and a place in any other State of the United States, or the District of Columbia; or between places in the same State of the United States through the air space over any place outside thereof; or between places in the same Territory or possession of the United States, or the District of Columbia;
   "(b) a place in any State of the United States, or the District of Columbia, and any place in a Territory or possession of the United States; or between a place in a Territory or possession of the United States, and a place in any other Territory or possession of the United States; and
   "(c) a place in the United States and any place outside thereof, whether such commerce moves wholly by aircraft or partly by aircraft and partly by other forms of transportation."

3. 49 U.S.C.A. § 647 (a) which, in so far as it is material here, reads:
   "(a) If any person violates any provision of this chapter, or any rule, regulation, requirement, or order thereunder, or any term, condition, or limitation of any certificate or permit issued under this chapter, the Board, its duly authorized agent, or, in the case of a violation of section 481(a) of this title, any party in interest, may apply to the district court of the United States, for any district wherein such person carries on his business or wherein the violation occurred, for the enforcement of said provision, or of such rule, regulation, requirement, order, term, condition, or lim-

both temporary and permanent injunctions against the claimed unauthorized operations of appellees. Appellees filed their respective answers to the complaints, and a consolidated hearing then was held on appellant's applications in each case for preliminary injunctions. After appellant had completed the presentation of its evidence, each appellee orally moved to dismiss the complaint against it. The trial court took the cases under submission and thereafter held that appellees were not engaged in interstate air transportation, granted the motions to dismiss, and entered judgments denying the applications for preliminary injunctions and dismissing the complaints. The appeals to this court followed.

The evidence introduced by appellant showed that appellees are common carriers whose aircraft operate solely between points in the state of California, principally San Diego, Burbank and San Francisco; that neither of the appellees has a certificate of convenience and necessity required by Section 401(a)[4] as a condition precedent to engaging in interstate air transportation; and that, in addition to transporting passengers whose entire journeys are accomplished between points in California, appellees also carry passengers moving to and from out-of-state points who use appellees' services as a part of their continuous journey. With regard to this last mentioned class of passengers, considerable evidence, both oral and documentary, was directed by appellant toward portraying in detail how some of them arrived aboard and were carried by appellees' aircraft, e. g., how and by whom their reservations were made, from whom they received their tickets and to whom they made payment therefor, the kind of tickets delivered to them, how they transferred between appellees' aircraft and those of other carriers, the manner in which their luggage was checked and how it was transferred between aircraft, etc.

No findings of fact were made below in either case but the trial judge filed a memorandum opinion in the Pacific Southwest case (No. 14648)[5] wherein he *found* "that defendant was not engaged in interstate air transportation and, consequently, the Court is without jurisdiction, and this action must be dismissed (Rule 12, Federal Rules of Civil Procedure, 28 U.S.C.A.); and such is the order."[6] It is plain from the memorandum opinion that the trial court considered as determinative of the cases the fact that appellees' aircraft did not depart the state of California. The ruling was, in essence, that since appellees' aircraft do not cross state lines, appellees cannot be engaged "*in commerce between* * * * a place in any State * * * and a place in any other State * * *.*" In our view the cases cannot be solved so simply.

itation; and such court shall have jurisdiction to enforce obedience thereto by a writ of injunction or other process, mandatory or otherwise, restraining such person, his officers, agents, employees, and representatives, from further violation of said provision or of such rule, regulation, requirement, order, term, condition, or limitation, and enjoining upon them obedience thereto."

4. See footnote 1.

5. Contemporaneously, by order entered in the California Central case (No. 14649) the memorandum opinion was adopted therein.

6. There is error in the grounds upon which the orders of dismissal were based. Even if the court below were correct in holding as a matter of law that the defendants were not engaged in interstate air transportation, the dismissals would have to be on the merits and not for lack of jurisdiction. The court had jurisdiction over the subject matter of the actions (49 U.S.C.A. § 647, footnote 3, supra) and jurisdiction over the persons of the parties to the actions. The court had the power to entertain the suits, to consider the various elements which entered into or qualified appellant's right to the relief sought, and to render a binding decision thereon. There was no lack of jurisdiction. General Investment Company v. New York Central Railroad Company, 271 U.S. 228, 230, 46 S.Ct. 496, 70 L.Ed. 920, 921.

There was evidence in the cases which would have supported findings by the trial court: That certain transcontinental "nonscheduled" air carriers operating between California and points such as Dallas, Kansas City, Chicago, and New York City, utilize appellees' services in transporting some of their passengers between points in California served by appellees; that with respect to some passengers carried by the transcontinental carriers from points east of California, the transcontinental carriers or their agents sell and deliver to each passenger a single ticket for passage from the point of origin to his point of ultimate destination in California, such as Oakland or San Diego, notwithstanding the fact that the particular aircraft of the transcontinental carrier for which the ticket is sold will not proceed beyond Burbank, California; that such passengers pay a single, unapportioned fare to the transcontinental carriers or their agents; that arrangements are made between the transcontinental carriers and appellees for the carriage of such passengers beyond Burbank (to Oakland or San Diego, for example) on appellees' aircraft; that such passengers make no fare payments to appellees and usually do not even see the tickets which appellees issue for the transportation beyond Burbank; and that the transcontinental carrier makes payment for the cost of the intra-California transportation upon billings from appellees.[7]

The trial judge could have found as *facts* with regard to appellees' operations the matters which we have just outlined; and, had he done so, then he would have had presented the questions of whether or not he should find, further, that appellees were engaged in interstate commerce under arrangements with the transcontinental carriers for the carriage of passengers on through routes and under joint rates from points outside California to the California points served by appellees, and whether or not United States v. Capital Transit Company, 325 U.S. 357, 363, 65 S.Ct. 1176, 89 L.Ed. 1663, 1669, required a holding that appellees were engaged in interstate air transportation.

Appellees contend that the evidence shows their relationship to the interstate transit of the passengers involved to be only casual and incidental; that, at most, the evidence shows only some instances of the simultaneous reservation of space and sale of tickets on the aircraft of both the transcontinental carriers and appellees by ticket agencies, plus some instances when the ticket agents or appellees' own personnel knew that passengers on appellees' lines had theretofore embarked or would thereafter embark upon an interstate flight *via* another carrier. If appellees were correct in this estimate of the evidence, then probably it would not be possible to hold that appellees were engaged in interstate air transportation. United States v. Yellow Cab Company, 332 U.S. 218, 230, 67 S.Ct. 1560, 91 L.Ed. 2010, 2020. Cf. Cederblade v. Parmelee Transportation Company, D.C.N.D.Ill., 94 F.Supp. 965; Mateo v. Auto Rental Company, Ltd., 9 Cir., 240 F.2d 831. But, as we have shown above, the evidence would support findings beyond those which appellees would concede.

Since the judgments of dismissal were entered at the conclusion of appellant's evidence and properly could have been based only upon the merits rather than lack of jurisdiction, the trial court was required to make complete findings of fact and conclusions of law.[8] We desire

---

7. There was evidence to the effect that procedures on eastbound flights are similar but not identical. For example, on flights where the aircraft of the transcontinental carrier departs from Burbank, passengers leaving at San Francisco, Oakland or San Diego for Burbank on appellees' aircraft pay to the transcontinental carrier or its agent a single fare from point of origin to point of ultimate destination; but the passengers are issued two tickets, one for passage on appellees' aircraft to Burbank and the other for onward transportation from Burbank via the transcontinental carrier to the point of ultimate destination outside California.

8. Rule 41(b), Rules of Civil Procedure: "For failure of the plaintiff to prose-

to emphasize the point that it is not our purpose in what we have said above to intimate what findings of fact the trial court *should* have made but, rather, to show what findings he *could* have made from the evidence. The making of findings is not our business but that of the trial court, just as would be the exercise of discretion regarding the grant or denial of the preliminary injunction if, instead of dismissing for lack of jurisdiction, the trial judge had reached a point on the merits where it was necessary for him to determine whether or not to issue such an injunction.

The judgments are reversed and the cases are remanded for further proceedings not inconsistent herewith.

cute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against him. After the plaintiff has completed the presentation of his evidence, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. In an action tried by the court without a jury the court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence. If the court renders judgment on the merits against the plaintiff, the court shall make findings as provided in Rule 52(a). Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction or for improper venue, operates as an adjudication upon the merits."
Rule 52(a), Rules of Civil Procedure: ▮▮▮▮

"In all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specially and state separately its conclusions of law thereon and direct the entry of the appropriate judgment; and in granting or refusing interlocutory injunctions the court shall similarly set forth the findings of fact and conclusions of law which constitute the grounds of its action. Requests for findings are not necessary for purposes of review. Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses. The findings of a master, to the extent that the court adopts them, shall be considered as the findings of the court. If an opinion or memorandum of decision is filed, it will be sufficient if the findings of fact and conclusions of law appear therein. Findings of fact and conclusions of law are unnecessary on decisions of motions under Rules 12 or 56 or any other motion except as provided in Rule 41(b)."