F. Ray MARSHALL, Secretary of Labor, United States Department of Labor, Plaintiff-Appellant,

v.

VICTORIA TRANSPORTATION COMPANY, INC. and Doro Besteiro, Defendants-Appellees.

F. Ray MARSHALL, Secretary of Labor, United States Department of Labor, Plaintiff-Appellant,

v.

BROWNSVILLE TRANSPORTATION COMPANY, INC. and Jose Colunga, Defendants-Appellees.

Nos. 77–2263, 77–2274.

United States Court of Appeals, Fifth Circuit.

Oct. 4, 1979.

Carin A. Clauss, Sol. of Labor, Kerry L. Adams, Atty., U.S. Dept. of Labor, Washington, D.C., for plaintiff-appellant in Nos. 77–2263, 77–2274.

Homero M. Lopez, Brownsville, Tex., for defendants-appellees in Nos. 77–2263, 77–2274.

Before WISDOM, HILL and VANCE, Circuit Judges:

VANCE, Circuit Judge:

Defendants operate two city bus lines, each of which serves portions of Brownsville, Texas. Plaintiff sued defendants charging that they employed workers in commerce, as defined by the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §§ 201–219, at rates of pay less than the minimum wage required by the Act, 29 U.S.C. § 206. Plaintiff further charged that defendants violated the overtime provisions of the Act, 29 U.S.C. § 207, by failing to compensate their employees for employment in excess of forty hours per week at rates not less than one and one-half times the rate at which they were employed.

As used in the Act, " 'Commerce' means trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof." 29 U.S.C. § 203(b). Brownsville is separated from the Republic of Mexico by the Rio Grande River. The "commerce" alleged in this case is the transportation of persons travelling between Brownsville, Texas, and Mexico.

The district court granted summary judgments for defendants holding that their employees were not employed in commerce and that the employees therefore were not within the coverage of the Act. In reviewing a summary judgment we must view all evidence and the inferences to be drawn from the evidence in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.,* 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Time, Inc. v. Ragano,* 427 F.2d 219 (5th Cir. 1970). Before we examine the facts, however, we must consider the controlling principles of law.

Coverage depends on the special circumstances of the particular business involved. *Walling v. Jacksonville Paper Co.,* 317 U.S. 564, 63 S.Ct. 332, 87 L.Ed. 460 (1943). The Supreme Court has recognized that the Act's purpose " ' . . . was to extend federal control in this field throughout the farthest reaches of the channels of interstate commerce.' And in determining what constitutes 'commerce' or 'engaged in commerce' we are guided by practical considerations." *Overstreet v. North Shore Corp.,* 318 U.S. 125, 128, 63 S.Ct. 494, 496, 87 L.Ed. 656 (1943) (quoting *Walling v. Jacksonville Paper Co.,* 317 U.S. at 567, 63 S.Ct. 332). This court is committed to giving the Act a broad, liberal construction. *Brennan v. Wilson Building, Inc.,* 478 F.2d 1090 (5th

Cir.), *cert. denied,* 414 U.S. 855, 94 S.Ct. 156, 38 L.Ed.2d 105 (1973); *Hayden v. Bowen,* 404 F.2d 682 (5th Cir. 1968), *cert. denied,* 395 U.S. 933, 89 S.Ct. 1995, 23 L.Ed.2d 448 (1969). No *de minimis* rule applies to the Act; any regular contact with commerce, no matter how small, will result in coverage. *Mabee v. White Plains Publishing Co., Inc.,* 327 U.S. 178, 66 S.Ct. 511, 90 L.Ed. 607 (1946); *Schultz v. Kip's Big Boy, Inc.,* 431 F.2d 530 (5th Cir. 1970); *Mitchell v. Independent Ice & Cold Storage Co.,* 294 F.2d 186 (5th Cir. 1961), *cert. denied,* 368 U.S. 952, 82 S.Ct. 394, 7 L.Ed.2d 386 (1962). We must determine whether the work of defendants' employees is actually in commerce or is so closely related to the movement of commerce that it is for practical purposes a part of it rather than an isolated local activity. *Mitchell v. C. W. Vollmer & Co.,* 349 U.S. 427, 75 S.Ct. 860, 99 L.Ed. 1196 (1955).

Both defendants maintain downtown terminals a short distance from the International Bridge that crosses the Rio Grande.[1] Defendant Brownsville Transportation operates five regular fare paying routes in the western part of the city. Defendant Victoria operates four regular fare paying routes in the eastern part. Under contractual arrangements with merchants and shopping center operators, each defendant also operates a route providing free bus service to the vicinity of Amigoland Mall, a shopping center.

The routes of both defendants are within walking distance of the bridge that connects Texas to Mexico. In addition, Mexican passengers can be delivered to the terminals of both companies by private automobile as well as Mexican bus. Eighteen and seven-tenths percent of all fare paying passengers on defendant Brownsville Transportation's buses either originate or terminate their journeys in Mexico. The comparable figure for defendant Victoria is 14.2%.

Defendants convey these international travelers to and from widely distributed locations in Brownsville. Approximately a half million passengers per year ride the free buses to Amigoland. A large number of those passengers entered Texas by walking across the bridge from Mexico.[2] The evidence before the district court demonstrates that, although defendants' employees do not cross into Mexico, a substantial, regular and recurring part of their work consists of transporting persons that are making international journeys.

Defendants argue that this activity is not sufficient to result in coverage because their business is essentially local and is only incidentally related to the international journeys of their passengers. The defense contentions rest on *United States v. Yellow Cab Co.,* 332 U.S. 218, 67 S.Ct. 1560, 91 L.Ed. 2010 (1947) and *Mateo v. Auto Rental Co.,* 240 F.2d 831 (9th Cir. 1957).

Reliance on *Yellow Cab* raises two immediate problems. First, it is an anti-trust suit in which the broader Fair Labor Standards Act coverage precedents are not applicable. *See Gulf Oil Corp. v. Copp Paving Co.,* 419 U.S. 186, 95 S.Ct. 392, 42 L.Ed.2d 378 (1974). Second, in *Yellow Cab* the taxi service provided to passengers travelling to and from the railroad terminal was found to be only casual and incidental. By contrast, every bus route of each defendants' company carries a substantial percentage of international travelers every day.

The ninth circuit opinion in *Mateo* supports defendants' position, but it was decided on the incorrect assumption that *Yellow Cab* was controlling authority in a Fair Labor Standards Act case.

We believe that the correct rule in this situation derives from *United States v. Capital Transit Co.,* 338 U.S. 286, 70 S.Ct. 115, 94 L.Ed. 93 (1949). In that case the transit

---

1. Most the facts before the court came from the deposition of James L. Morely. Mr. Morely is connected with a firm of consulting engineers that was engaged by the City of Brownsville to conduct a transit study in August 1975. His testimony disclosed information developed by that study.

2. Analysis of the routes on which fares were not paid was not part of the transit survey. This statement appears in the record only as a generalization.

company did not cross state lines,[3] but transported passengers to a point within the District of Columbia where they were picked up by other buses that took them into Virginia. In deciding that the transit company was engaged in interstate commerce, the Supreme Court said,

> Our previous holding was that all of Transit's intra-District carriage of passengers bound to and from the Virginia establishments was part of an "interstate" movement and therefore subject to Commission regulation throughout, upon proper Commission findings. *United States v. Yellow Cab Co.,* supra, does not conflict with our prior holding that Transit's transportation was part of a continuous stream of interstate transportation. We adhere to that holding. Transit's intra-District streetcar and bus transportation of passengers going to and from the Virginia establishments is an integral part of an interstate movement.

*Id.* at 290, 70 S.Ct. at 117.

In *Brennan v. S & M Enterprises,* 362 F.Supp. 595 (D.D.C.1973), aff'd, 164 U.S. App.D.C. 368, 505 F.2d 475 (D.C.Cir. 1974), a Fair Labor Standards Act case, employees of Washington, D.C., parking garages were held to be covered because their work facilitated interstate travel by commuters from Virginia and Maryland and by tourists from across the country. In language that applies to the case before us the court held,

> The defendants' garages operate in the downtown business section of Washington, D.C. Admittedly they do not depend on one interstate facility for their revenue. It cannot be argued, however, that the defendants' employees do not facilitate interstate travel by commuters and shoppers from the surrounding Maryland and Virginia suburbs and by tourists from around the United States. Defendant Manning in his deposition admits that the garages sell monthly parking contracts to commuters (pp. 13–14), have contracts for parking with several hotels

(pp. 14–15), and many downtown businesses (pp. 15–16). These contracts clearly facilitate the interstate transactions and are entwined with the continuous stream of interstate commerce. Moreover, given the unique geographic status of Washington, D.C., a common-sense approach to interstate commerce requires the conclusion that the employees of the defendants are engaged in commerce. Interstate commerce would be impeded without the employees' activity.

*Id.* at 599.

This court's prior coverage determinations are in harmony with the holding in *S & M. See Brennan v. Wilson Building, Inc.,* 478 F.2d 1090 (5th Cir.), *cert. denied,* 414 U.S. 855, 94 S.Ct. 156, 38 L.Ed.2d 105 (1973); *Hodgson v. Travis Edwards, Inc.,* 465 F.2d 1050 (5th Cir.), *cert. denied,* 409 U.S. 1076, 93 S.Ct. 685, 34 L.Ed.2d 665 (1972); *Hayden v. Bowen,* 404 F.2d 682 (5th Cir. 1968), *cert. denied,* 395 U.S. 933, 89 S.Ct. 1995, 23 L.Ed.2d 448 (1969).

■ Because Brownsville, like the District of Columbia, is located on a border, it shares the special characteristics that were recognized in *Capital Transit* and *S & M.* The evidence before the district court clearly established that transporting persons making international journeys was a regular, recurring and substantial part of the work of defendants' employees in the operation of all of their routes. Because their work was entwined with a continuous stream of international travel, they were engaged in commerce within the meaning of the Act. The trial court's grant of summary judgments based on its incorrect, contrary conclusion must be reversed.

**REVERSED and REMANDED.**

---

**3.** We describe the second *Capital Transit* case. When the first case *United States v. Capital Transit Co.,* 325 U.S. 357, 65 S.Ct. 1176, 89 L.Ed. 1663 (1945), was decided, the company's routes crossed into Virginia, but those routes were discontinued during the interim.