Kurt W. COOLMAN, Plaintiff,

v.

Arthur R. ROBINSON, as Executive Secretary of the Indiana Alcoholic Beverage Commission, James D. Sims, as Chairman of the Indiana Alcoholic Beverage Commission, Morris Tobian, as Vice Chairman of the Indiana Alcoholic Beverage Commission, Austin E. Barker, as Member of the Indiana Alcoholic Beverage Commission, William H. Warren, as Member of the Indiana Alcoholic Beverage Commission, the Indiana Alcoholic Beverage Commission, and Otis R. Bowen, as Governor of Indiana, Defendants.

No. S 77–127.

United States District Court,
N. D. Indiana,
South Bend Division.

June 20, 1978.

Charles W. Lahey, South Bend, Ind., for plaintiff.

Theodore L. Sendak, Atty. Gen., Indianapolis, Ind., for defendants.

### ORDER AND MEMORANDUM

ALLEN SHARP, District Judge.

The jurisdiction of this court is invoked pursuant to the provisions of Title 28, Section 1343(3) and is authorized by Title 42, Section 1983 of the United States Code in that plaintiff sues to redress the deprivation, under color of the laws and statutes of the State of Indiana, of rights, privileges and immunities secured by the Fourteenth Amendment to the Constitution of the United States and also Article Four, Section Two, of the Constitution of the United States.

The plaintiff, Kurt W. Coolman, was born in Gary, Indiana on February 12, 1945. He was a continuous resident of Gary until 1968 at which time he moved to Schoolcraft, Michigan. In 1976 the plaintiff returned to Indiana and has been a resident of St. Joseph County, Indiana continuously since that time.

In May of 1977 the plaintiff purchased a pizza restaurant and filed an application for an alcoholic beverage permit with the Indiana Alcoholic Beverage Commission. The plaintiff's application was denied and returned to him by the defendant, Arthur R. Robinson, Executive Secretary of the Indiana Alcoholic Beverage Commission, on the grounds that the plaintiff had not been a continuous resident of the State of Indiana for the past five years as required by the Indiana Statute, I.C. 7.1–3–21–3.

On July 19, 1977 the plaintiff filed the present suit challenging the constitutionality of I.C. 7.1–3–21–3. The plaintiff contends that the statute penalizes the exercise of his fundamental right to travel and therefore denies the plaintiff the equal protection of the laws as guaranteed by the Fourteenth Amendment of the Constitution of the United States. Accordingly, the issue before the Court is whether Indiana Code 7.1–3–21–3, which prohibits the issuance of an alcoholic beverage permit of any type to a person who has not been a continuous and bona fide resident of the State of Indiana for five years, and the county in which the business premises are located for one year immediately preceding the date of the application for a permit, creates a classification which constitutes an invidious discrimination denying petitioner equal protection of law in violation of the Fourteenth Amendment to the Constitution of the United States.

The plaintiff contends that I.C. 7.1–3–21–3 has the effect of creating two classes of applicants indistinguishable from each other in all other regards except that one class is composed of Indiana residents who have resided in Indiana for the past five years and in the county in which the business premises concerned are located for one year preceding application for a permit, and a second class composed of non-residents and Indiana residents who do not meet the aforementioned residence requirements. Members of the first class are free to apply for a permit to sell alcoholic beverages while members of the second are not. Furthermore, since the plaintiff's application for an alcoholic beverage permit was returned for the sole reason that he failed to meet the durational residency requirement of the statute, the plaintiff argues that the statute unreasonably penalizes him for exercising his fundamental right of interstate travel.

## I. RIGHT TO TRAVEL

The right to travel is a very old and well established constitutional right. As the Supreme Court of the United States noted in *Shapiro v. Thompson*, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969):

"This Court long ago recognized that the nature of our Federal Union and our constitutional concepts of personal liberty unite to require that all citizens be free to travel throughout the length and breadth of our land uninhibited by statutes, rules, or regulations which unreasonably burden or restrict this movement."

Id. at 629, 89 S.Ct. at 1329.

As early as 1849 Chief Justice Taney wrote:

"For all the great purposes for which the Federal government was formed, we are one people, with one common country. We are all citizens of the United States; and, as members of the same community, must have the right to pass and repass through every part of it without interruption, as freely as in our own States." *The Passenger Cases*, 7 How. 283, 492, 12 L.Ed. 702 (1849).

Curiously, the Supreme Court has never specifically referred to a particular constitutional provision as the source of this right to interstate travel. As Mr. Justice Stewart said for the Court in *United States v. Guest*, 383 U.S. 745, 757–758, 86 S.Ct. 1170, 1178, 16 L.Ed.2d 239 (1969):

"The constitutional right to travel from one State to another * * * occupies a

position fundamental to the concept of our Federal Union. It is a right that has been firmly established and repeatedly recognized.

" * * * [The] right finds no explicit mention in the Constitution. The reason, it has been suggested, is that a right so elementary was conceived from the beginning to be a necessary concomitant of the stronger Union the Constitution created. In any event, freedom to travel throughout the United States has long been recognized as a basic right under the Constitution."

See also, *Memorial Hospital v. Maricopa County*, 415 U.S. 250, 94 S.Ct. 1076, 39 L.Ed.2d 306 (1974); *Dunn v. Blumstein*, 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972).

## II. APPROPRIATE STANDARD

■ Consequently, any classification which operates to penalize those persons who have exercised their constitutional right of interstate travel comes under great suspicion and must be carefully scrutinized. Exactly what test must be applied in these cases is not entirely clear. While *Shapiro* and *Dunn, supra*, stand for the proposition that a classification which "operates to penalize those persons . . . who have exercised their constitutional right of interstate migration" must be justified by a compelling state interest. *Oregon v. Mitchell*, 400 U.S. 112, 91 S.Ct. 260, 27 L.Ed.2d 272 (1970) (separate opinion of Brennan, White and Marshall, JJ.), it is not clear when a classification serves to penalize and consequently when to apply the compelling state interest test. The Supreme Court of the United States itself recognized the confusion and ambiguity in *Memorial Hospital, supra* :

"Although any durational residence requirement impinges to some extent on the right to travel, the Court in *Shapiro* did not declare such a requirement to be per se unconstitutional. The Court's holding was conditioned, 394 U.S., at 638 n. 21, 89 S.Ct., at 1333, by the caveat that some 'waiting-period or residence requirements . . . may not be penalties upon the exercise of the constitutional

right of interstate travel.' The amount of impact required to give rise to the compelling-state-interest test was not made clear."

*Id.* 415 U.S. at 256–257, 94 S.Ct. at 1081.

More recently in *Sosna v. Iowa*, 419 U.S. 393, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975), the Supreme Court of the United States upheld a one-year residency requirement which Iowa established as a condition precedent to obtaining an Iowa divorce. More significantly, however, is the test the court applied in *Sosna*. It appears the court upheld the durational residency requirement without applying the compelling state interest test as announced in *Shapiro* and *Dunn*. As Mr. Justice Marshall wrote in his dissenting opinion in *Sosna* :

"The Court today departs sharply from the course we have followed in analyzing durational residency requirements since *Shapiro v. Thompson*, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969). Because I think the principles set out in that case and its progeny compel reversal here, I respectfully dissent.

As we have made clear in *Shapiro* and subsequent cases, any classification that penalizes exercise of the constitutional right to travel is invalid unless it is justified by a compelling governmental interest.

.     .     .     .     .

The Court's failure to address the instant case in these terms suggests a new distaste for the mode of analysis we have applied to this corner of equal protection law. In its stead, the Court has employed what it appears to be an ad hoc balancing test, under which the State's putative interest in ensuring that its divorce petitioners establish some roots in Iowa is said to justify the one-year residency requirement. I am concerned not only about the disposition of this case, but also about the implications of the majority's analysis for other divorce statutes and for durational residency requirement cases in general."

*Id.* at 418–419, 95 S.Ct. at 567.

Writing for the court in *Sosna* Mr. Justice Rehnquist distinguished the Iowa residency requirement from *Shapiro, Dunn*, and *Memorial Hospital*:

"What those cases had in common was that the durational residency requirements they struck down were justified on the basis of budgetary or recordkeeping considerations which were held insufficient to outweigh the constitutional claims of the individuals. But Iowa's divorce residency requirement is of a different stripe. . . .

Iowa's residency requirement may reasonably be justified on grounds other than purely budgetary considerations or administrative convenience. Cf. *Kahn v. Shevin*, 416 U.S. 351, 94 S.Ct. 1734, 40 L.Ed.2d 189 (1974)."

*Id.* at 406, 95 S.Ct. at 561.

■ Upon analysis it now appears that the compelling state interest test is not necessarily intended to be applied to all durational residency requirement cases. Rather the court must first determine the nature of the right or privilege infringed before determining what test is to be applied to the durational residency requirement. If the right or privilege infringed can be characterized as fundamental or basic then the state must meet the higher "compelling state interest" test in order to justify the residency requirement. If the nature of the right or privilege infringed is not fundamental or basic then the lesser "rational nexus to legitimate state interests" test is applicable.

Accordingly, the Supreme Court applied the compelling state interest test in *Shapiro* where the right or privilege infringed was welfare eligibility, in *Dunn* where voting eligibility was in question and finally in *Memorial Hospital* where the right or privilege infringed was medical care to an indigent. The Supreme Court, however, failed to apply the compelling state interest in *Sosna* as discussed, where the question concerned the eligibility to obtain a divorce in Iowa. As in *Vlandis v. Kline*, 412 U.S. 441, 93 S.Ct. 2230, 37 L.Ed.2d 63 (1973), the Supreme Court recognized the right of a state to impose on a student a "reasonable durational residency requirement" in order to be eligible for lower instate tuition fees.

Furthermore, by way of a footnote the Supreme Court has indicated that residence requirements to obtain a license to practice a profession, to hunt or fish etc. may withstand constitutional attack. "Such requirements may promote compelling state interests on the one hand, or, on the other, may not be penalties upon the exercise of the constitutional right of interstate travel." *Shapiro, supra*, note 21.

■ With these cases in mind, this court is of the opinion that the plaintiff's right or privilege in the present suit is not so basic or fundamental as to require the State of Indiana to meet the compelling state interest test. Denying the plaintiff a license to sell alcoholic beverages because of his inability to satisfy a durational residency requirement is clearly and substantially different than denying a person the basic necessities of life such as food, shelter, and medical care, *Shapiro, Memorial Hospital* or denying a person a basic and fundamental political right such as voting, *Dunn*. Accordingly, this Court now determines that the proper test to apply in this case is whether the Indiana Statute, I.C. 7.1–3–21–3, "rationally furthers some legitimate state purpose and therefore does not constitute an invidious discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment." *San Antonio School District v. Rodriguez*, 411 U.S. 1, 17, 93 S.Ct. 1278, 1288, 36 L.Ed.2d 16 (1973). This Court's position is reenforced by *Mass. Bd. of Retirement v. Murgia*, 427 U.S. 307, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976), wherein the Supreme Court held that "a standard less than strict scrutiny [compelling state interest test] has consistently been applied to legislation restricting the availability of employment opportunities." *Id.* at 313, 96 S.Ct. at 2566.

III. *TWENTY–FIRST AMENDMENT*

■ Having now determined the appropriate standard to apply, the Court will direct its attention to the challenged stat-

ute, I.C. 7.1–3–21–3. The Court is well aware of the fact that the statute in question concerns the State of Indiana's power and authority under the Twenty-first Amendment of the Constitution of the United States to license the sale of alcoholic beverages within the state. Consequently, as a result of the Twenty-first Amendment, this statute takes on special significance and must be accorded special consideration. As the Supreme Court said in *Joseph E. Seagram & Sons v. Hostetter*, 384 U.S. 35, 41–42, 86 S.Ct. 1254, 1259, 16 L.Ed.2d 336 (1966):

> "Consideration of any state law regulating intoxicating beverages must begin with the Twenty-first Amendment, the second section of which provides that: 'The transportation or importation into any State, Territory, or possession of the United States for delivery or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited.'"

Furthermore, as a result of the Twenty-first Amendment, the states are given greater latitude in legislating in the area of the possession, sale, and distribution of alcoholic beverages. As Mr. Justice Rehnquist stated, writing for the court in *California v. LaRue*, 409 U.S. 109, 114, 93 S.Ct. 390, 395, 34 L.Ed.2d 342 (1972):

> "While the States, vested as they are with general police power, require no specific grant of authority in the Federal Constitution to legislate with respect to matters traditionally within the scope of the police power, the broad sweep of the Twenty-first Amendment has been recognized as conferring something more than the normal state authority over public health, welfare, and morals."

▮ Accordingly, while all legislation is presumed to be valid, legislation which deals with a subject matter which is specifically delegated to the states under the Twenty-first Amendment must be given greater deference.

▮ This does not mean, however, that once a plaintiff brings his claim within the ambit of the Twenty-first Amendment all Fourteenth Amendment considerations are necessarily rendered moot. As the Supreme Court more recently declared in *Craig v. Boren*, 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976):

> ". . . [t]he Court has never recognized sufficient 'strength' in the [21st] Amendment to defeat an otherwise established claim of invidious discrimination in violation of the Equal Protection Clause. Rather, *Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 178–179, 92 S.Ct. 1965, 1974, 32 L.Ed.2d 627 (1972), establishes that state liquor regulatory schemes cannot work invidious discriminations that violate the Equal Protection Clause."

*Id.* at 207–208, 97 S.Ct. at 462.

Consequently, although the challenged statute carries a presumption of constitutional validity which is fortified by the Twenty-first Amendment, this Court must still examine the statute to determine whether it violates any Fourteenth Amendment provisions.

## VI.   *MERITS*

Relying upon facts stated by the Attorney General of Indiana in his memorandum in support of his motion to dismiss, the challenged statute, I.C. 7.1–3–21–3 while enacted in 1973 is not substantially different from the Alcoholic Beverage Act of 1945.

According to the Attorney General's memorandum, at the time the statute was enacted the Indiana legislature was concerned with allegations that persons connected with organized crime or of otherwise bad character were attempting to become involved in Indiana's liquor industry. The proposed solution was to establish a system for insuring that only citizens of high reputation, with the interests of the community and state at heart, would be permitted to receive licenses. This was to promote a state governmental interest in assuring that the license holders, who sold or distributed alcoholic beverages, were responsible, stable citizens interested in the future of the state and the community.

Indiana's scheme to promote their legitimate governmental interest relies heavily upon the personal knowledge of the applicant's character and reputation by members of his own community. The first requirement an applicant must meet is that he must have lived in his current county for at least one year. (This requirement is not in dispute in the present suit for the plaintiff has apparently satisfied it.). At this stage the County Liquor Board may take the testimony of local residents who may testify of their knowledge of the applicant. The County Board may then approve or deny the application. If the application is approved locally, it is subject to further approval by the state Alcoholic Beverage Commission. See I.C. 7.1–3–19–1 et seq.

It is at this stage that the five year residency requirement comes into play. To assess the character of applicants as thoroughly as a given case requires the State places great reliance upon first-hand knowledge of members of a community as to an applicant's character and reputation. This evidence is acquired from the commission's investigators from their own knowledge or from their interviews with members of the applicant's community. The Indiana legislature and commission has concluded that this process is necessary to insure that license holders are responsible and stable as possible.

Since Indiana places so much weight upon the applicant's character and reputation in the community it certainly cannot be said that some residency requirement is unreasonable and improper. It is elementary that before an applicant can obtain a reputation in the community he must reside for some period of time within the community.

The question this Court must address, however, is whether the five year residency requirement is too long a time period to achieve an otherwise legitimate state interest. The plaintiff would wish this Court to conclude that while some residency requirement is permissible a five year residency requirement is constitutionally impermissible.

This Court cannot agree. It is quite clear to this Court that there does indeed exist a rational nexus between the challenged residency requirement and, under the Twenty-first Amendment a legitimate state interest—the licensing of the sale and distribution of alcoholic beverages. Additionally, given the specific constitutional authority under the Twenty-first Amendment enabling the states to exclusively control within their respective jurisdictions the sale and distribution of alcoholic beverages, this Court cannot hold that a five year residency requirement is constitutionally infirm.

Quite obviously the plaintiff would have a much stronger case were the challenged statute unaffected by the Twenty-first Amendment. But this Court must examine the statute ever mindful of the broad power and authority granted to the states to legislate in matters dealing with the sale and distribution of alcoholic beverages. The challenged residency requirement must be viewed in the light of the Twenty-first Amendment as well as the Fourteenth Amendment.

Furthermore, this Court will not engage in the exercise of determining that five years is constitutionally infirm but three years, however, is constitutionally permissible. Such constitutional hairsplitting, would be entirely inappropriate. Under the Twenty-first Amendment the people of Indiana, through their elected legislature, have determined that five years is the length of time necessary for a community to formulate an opinion of a prospective licensee's reputation in the community. This Court will not substitute its judgment that the desired goal may be reached in less than five years nor does the Constitution require it. The constitutional requirement that there exist a rational nexus between the challenged statute and a legitimate state interest is, in this case, met. Paraphrasing a portion of the Supreme Court's opinion in Mass. Bd. of Retirement v. Murgia, 427 U.S. 307, 317, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976). This Court does not decide today that the Indiana Statute is wise, that it best fulfils the relevant social and economic objectives that Indiana might

ideally espouse, or that a more just and humane system could not be devised. This Court only decides today that the statute enacted by the Indiana legislature, I.C. 7.1–3–21–3, does not deny the plaintiff the equal protection of the laws under the Constitution of the United States.

Accordingly, the plaintiff's Motion for Summary Judgment is now DENIED. The Court treats the defendant's Motion to Dismiss, filed on September 6, 1977 as a Motion for Summary Judgment. In consideration thereof, the Court now finds that there is no issue as to any material fact and that the defendants are entitled to a judgment as a matter of law. Accordingly, the defendants' Motion for Summary Judgment is now GRANTED.