**AIRPORT TAXI CAB ADVISORY COMMITTEE, Annie Pearl Avery, Jesse Jones, John Wesley Spears, Joe Tucker, Willie Davis Render and Daryl Mitchell, individually and on behalf of all others similarly situated,**

v.

**CITY OF ATLANTA, Maynard Jackson,**

**Amicus Curiae: Southeastern Legal Foundation (8/6/81).**

**Civ. A. No. C81–1083A.**

United States District Court, N.D. Georgia, Atlanta Division.

Aug. 10, 1983.

On Remaining Claims March 30, 1984.

Ralph Goldberg, Wayne T. Elliott, Atlanta, Ga., for plaintiffs.

Marva Jones Brooks, Nina M. Radakovich, Irmina Rivero Owens, Atlanta, Ga., for defendants.

## ORDER

RICHARD C. FREEMAN, District Judge.

Plaintiffs filed this civil rights action, 42 U.S.C. § 1983, seeking a declaration that the Vehicles for Hire Ordinance (the Ordinance) adopted by the City of Atlanta, Georgia (City), violates federal and state law. By order dated July 24, 1981, this court denied the plaintiffs' application for preliminary injunctive relief. The court also ruled that the Ordinance does not violate the uniformity provision of the Constitution of the State of Georgia in an order dated August 28, 1981. The action is now before the court on the defendants' motion for summary judgment and the plaintiffs' motion for partial summary judgment. Rule 56, Fed.R.Civ.P.

A party who moves for summary judgment bears the exacting burden of demonstrating that there is no genuine dispute as to any material fact in the case. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). In

determining whether a movant has met this burden, the court must view the evidence and all factual inferences in the light most favorable to the party opposing the motion. *Environmental Defense Fund v. Marsh,* 651 F.2d 983, 991 (5th Cir.1981). If the record presents factual issues, the court must deny the motion and proceed to trial. *Id.* Furthermore, the court may discover questions of material fact even though both parties, in support of cross-motions for summary judgment, have asserted that no such questions exist. *See Donovan v. District Lodge No. 100, IAM,* 666 F.2d 883, 886–87 (5th Cir.1982); Wright, Miller, and Kane, *Federal Practice and Procedure: Civil* § 2720. Thus, the court can resolve legal issues raised by the parties on cross-motions for summary judgment only if it has no doubt that the relevant facts are beyond dispute.

Rule 56 permits either party to move for summary judgment in his favor upon "all or any part" of the plaintiff's claims, Rule 56(a) and (b), and summary judgment therefore may be granted as to any one of several claims, *Moss v. Ward,* 450 F.Supp. 591, 594 (W.D.N.Y.1978).

After reviewing the filings in this action, the court finds that the facts are sufficiently beyond dispute as to two of the plaintiffs' claims and for the reasons that follow, the court will grant summary judgment for the defendants on these claims. However, questions of material fact remain as to the remaining issues raised by the plaintiffs and therefore the court will defer consideration of these issues.

The Ordinance which is the subject of this action is a comprehensive reorganization of the ordinances regulating vehicles for hire within the City of Atlanta. The industry has historically been regulated by the City pursuant to the police power granted it by the State of Georgia. *See Charter of the City of Atlanta,* App. I, ¶ 37 (1973 Ga.Laws 2188, 2260). In 1980, prompted by concerns about the quality of taxi service, the City Council adopted an ordinance designed to freeze the number of vehicles and drivers operating in the City.

The new Ordinance, which promulgated new regulations for the industry, went into effect on February 3, 1981. With a few exceptions, the provisions of the Ordinance are substantially similar to those contained in previous ordinances. The Ordinance contains no maximum limitation on the number of driver permits which may be issued. However, the Ordinance does contain new requirements that an applicant for a driver's permit (1) have been a resident of Fulton, DeKalb, Cobb, Gwinnett, Clayton, or Douglas counties for one year prior to the date of application and (2) not have been convicted of certain enumerated criminal offenses within five years prior to the date of application. The Ordinance retains from the 1980 ordinance the system of monthly insurance stickers to evidence insurance coverage. In addition, the Ordinance requires owners to obtain a Certificate of Public Necessity and Convenience (CPNC) for each taxi operated in the City. All taxis must be affiliated with a company to receive a CPNC. The Ordinance continues the moratorium on new taxis contained in the 1980 ordinance by limiting to 1200 the number of CPNCs to be issued. However, CPNCs may be obtained for all vehicles which were lawfully operating at the time the Ordinance was adopted. The Ordinance also provides that no company permit will be issued to companies owning or leasing fewer than 25 vehicles. Companies operating in the City on the effective date of the Ordinance are exempted from this requirement.

Plaintiffs argue that the Ordinance violates the first and fourteenth amendments and the commerce clause of the United States Constitution. Specifically, plaintiffs assert that the limit on the number of taxis and the CPNC requirement constitute regulation of interstate commerce by the City in violation of the commerce clause. Plaintiffs argue that the one-year residency requirement violates the plaintiffs' constitutionally protected right to travel. Plaintiffs also contend that the Ordinance treats permit holders convicted of felonies differently from applicants convicted of felonies

and therefore violates the equal protection and due process guarantees of the Constitution. The right of freedom of association is also violated, the plaintiffs argue, by the minimum size requirement for taxi companies and the company affiliation requirement in the Ordinance.

In support of their motion for summary judgment, the defendants argue that the transportation service provided by taxis within the City is not part of interstate commerce. Further, the defendants contend that even if the Ordinance does regulate interstate commerce, the Ordinance is valid because it does not unduly burden that commerce. Defendants assert that the driver permit issuance and revocation provisions do not deny equal protection or due process. The one-year residency requirement, defendants argue, is rationally related to the object of the Ordinance and the interests it seeks to protect. Defendants contend that freedom of association rights are not implicated by operation of the Ordinance because the Ordinance is not concerned with the advancement or advocacy of particular beliefs and ideas which are protected by the first amendment.

### 1. *Interstate Commerce*

■ An analysis of the relevant case law in light of the facts of the instant case leads the court to conclude that the local operations of taxis between the airport and the City do not constitute a part of interstate commerce. The cases establish that taxis transporting passengers between an airport and businesses and homes in the area are not engaged in interstate commerce. *See Evanston Cab Co. v. City of Chicago*, 325 F.2d 907 (7th Cir.1963); *cf. United States v. Yellow Cab Co.*, 332 U.S. 218, 67 S.Ct. 1560, 91 L.Ed. 2010 (1947) (taxi transportation between railroad stations and surrounding areas). *Evanston Cab Co.* involved an antitrust challenge to a city ordinance restricting taxi service at an airport to certain companies. Describing the taxi service at the airport, the court said:

Nothing about the service affects interstate commerce. The service is incidental to a local operation and we would not be justified in resorting to impractical theorising in order to conclude that a local ride in a local taxi-cab affects interstate commerce.

325 F.2d at 912. Earlier, in *Yellow Cab*, the United States Supreme Court had reached the same conclusion about taxi service between railroad stations and homes, offices, and hotels. 332 U.S. at 232–33, 67 S.Ct. at 1567–68.

There are several factors noted in *Yellow Cab* and *Evanston Cab* that distinguish the instant case from the line of cases that have found certain taxi operations (or similar services) to be part of interstate commerce.

If taxi service or other local ground transportation is prearranged for the interstate travelers, the courts have found the local transportation to be part of the flow of interstate commerce. In *Yellow Cab* the Supreme Court distinguished between the local taxi service between railroad stations and homes and businesses and the prearranged taxi service provided for interstate passengers between different railroad stations. Although both types of service involved transporting passengers arriving from out of state, only the prearranged service between the stations was found to be part of interstate commerce. The service was part of the continuing interstate journey of the passengers. *Id.* at 228, 67 S.Ct. 1565–66. This analysis has been followed in other cases in which the local transportation had been prearranged and was thus an integral part of the interstate journey. *See Charter Limousine v. Dade County Board of City Commissioners*, 678 F.2d 586 (5th Cir.1982) (Unit B); *Southerland v. St. Croix Taxicab Ass'n*, 315 F.2d 364 (3d Cir.1963); *cf. Park 'N Fly of Texas, Inc. v. City of Houston*, 327 F.Supp. 910 (S.D.Tex.1971) (courtesy buses for commercial parking lots near the airport are in interstate commerce). In contrast, in situations where the interstate passengers have a choice as to their local

transportation, the transportation has been characterized as local and not part of the flow of interstate commerce. *See Yellow Cab Co.*, 332 U.S. 218, 67 S.Ct. 1560, 91 L.Ed. 2010 (1947); *Evanston Cab Co.*, 325 F.2d 907 (7th Cir.1963).

The fact that taxis operating subject to the Ordinance are required to serve the general public rather than airport customers exclusively is also significant. The taxis in the City are not totally dependent economically on income derived solely from transporting travelers to and from the airport. These trips are made in the normal course of their independent local service. *See Yellow Cab*, 332 U.S. 218, 67 S.Ct. 1560, 91 L.Ed. 2010 (1947); *Evanston Cab*, 325 F.2d 907 (1963). In contrast, when a taxi company was granted a monopoly to serve airport passengers exclusively, the operation was deemed to be in interstate commerce. *Woolen v. Surtran Taxicabs, Inc.*, 461 F.Supp. 1025 (N.D.Tex.1978).

In the instant case, although the plaintiffs may prefer to serve airport travelers, they are required to accept any passenger. They do not serve interstate travelers exclusively and taxis operating at the airport rarely cross state lines. Taxi service provided by the plaintiffs is not part of a pre-arranged interstate travel plan. The local taxi service is but one mode of transportation that travelers are free to select for travel to and from the airport. These factors serve to distinguish the instant case from *United States v. Capital Transit Co.*, 325 U.S. 357, 65 S.Ct. 1176, 89 L.Ed. 1663 (1949). In *Capital Transit* a company transporting commuters between Washington, D.C. and Virginia was found to be in interstate commerce. The company had regular operations across state lines and also within Washington, D.C. The Court found that the service within Washington, D.C. was an integral part of the interstate journey made by the commuters, most of whom had to begin or end their trips by buses or streetcars operated by the company within the district. In making this determination the Supreme Court also relied on its finding that the company's transfer and fare systems were equivalent to "joint rates" for a "through route." *Id.* at 364, 65 S.Ct. at 1179. No similar facts and circumstances exist in the instant case.

Plaintiffs also assert that the limit placed on the number of taxi permits to be issued under the Ordinance is a burden on interstate commerce and is unfair or unlawful because it will decrease competition within the taxi industry to the benefit of larger taxi companies. As noted above, the court has determined that taxi service within Atlanta is not part of interstate commerce. Nevertheless, even if the court assumes that the taxi activity is part of interstate commerce, the court finds that the Ordinance affects interstate commerce only incidentally and that the putative local benefits provided by the Ordinance outweigh any burdens which are placed on interstate commerce. *See Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142, 90 S.Ct. 844, 847, 25 L.Ed.2d 174 (1970).

The moratorium in the Ordinance operates by limiting the number of CPNCs that will be issued. All taxis must have a CPNC and all taxis operating on the effective date of the Ordinance received one. The moratorium does not restrict the number of driver permits issued by the City. The City has specific authority from the State of Georgia to "regulate and license vehicles for hire in the city; [and] to limit the number of such vehicles." Appendix I, Paragraph 37 of the *Charter of the City of Atlanta;* Ga.L.1973, p. 2188, Act No. 53. Moratoriums on the number of taxi permits have been upheld as valid exercises of a city's police power. *See Yellow Cab Co. v. City of Chicago*, 396 Ill. 388, 71 N.E.2d 652, 657 (1947).

While competition is generally recognized as resulting in the public good, there are situations where restraints are appropriate. In the instant case the City has received complaints about an excess number of taxis in the city. The airport, particularly, is an over-served area as indicated by the plaintiffs' own admissions that drivers must usually wait several hours to pick up passengers. The City Council decided

the public would be better served if a limit were placed on the number of taxis. The moratorium was designed to eventually result in an increased level of service to the public and increased profitability for the drivers. The Ordinance is a valid exercise of the City's police power to better meet what the City determines to be the public needs. "It is not in the province of this court to inquire as to the wisdom of passing the ordinance." *Yellow Cab Co. v. City of Chicago*, 396 Ill. 388, 71 N.E.2d at 659.

There is no evidence that the Ordinance provision will result in the creation of a monopoly within the taxi industry in Atlanta. The Ordinance reserves the right to increase the maximum number of CPNCs and specifically requires that the number be reconsidered every three years in light of changed conditions in the City. *See Yellow Cab Co. v. City of Chicago, supra; Capital Taxicab Co. v. Cermak*, 60 F.2d 608, 612 (N.D.Ill.1932).

The taxi operations in the City do not constitute interstate commerce. Moreover, the moratorium is not an unlawful restraint on competition and does not have a tendency to create a monopoly. Defendants' motions for summary judgment on the interstate commerce claim and on the taxi permit moratorium claims will be granted.

2. *Residency Requirement*

The Ordinance requires that before qualifying for a permit a taxi driver must live in one of six counties in the Atlanta area for at least one year. Plaintiffs assert that this requirement violates the constitutional right to travel recognized in *Shapiro v. Thompson*, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969).

■ The appropriate standard of review for this type of classification must be determined as the first step in evaluating the residency requirement. The case law establishes that durational residency requirements that infringe on fundamental or basic rights must be analyzed under the strict scrutiny standard. *See, e.g., Memorial Hospital v. Maricopa County*, 415 U.S. 250, 94 S.Ct. 1076, 39 L.Ed.2d 306 (1974) (medical care for indigents); *Dunn v. Blumstein*, 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972) (eligibility to vote); *Shapiro v. Thompson*, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969) (welfare benefits). Absent the presence of a specifically recognized fundamental right or a suspect class, the rational basis test applies in a challenge to a durational residency requirement. *See, e.g., Vlandis v. Kline*, 412 U.S. 441, 93 S.Ct. 2230, 37 L.Ed.2d 63 (1973); *Coolman v. Robinson*, 452 F.Supp. 1324 (N.D.Ind.1978). Therefore, the nature of the right or privilege infringed by the requirement must be determined before the proper standard of review can be determined. *See Coolman v. Robinson*, 452 F.Supp. 1324, 1328 (1978).

■ Although acknowledging the importance of employment, *see, e.g., Traux v. Raich*, 239 U.S. 33, 36 S.Ct. 7, 60 L.Ed. 131 (1915), the Supreme Court has never specifically recognized the right to work in a specific occupation as a fundamental or basic right which merits strict scrutiny review. The rational basis test has been applied to state legislation restricting employment and business opportunities. *See Massachusetts Board of Retirement v. Murgia*, 427 U.S. 307, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976) (mandatory retirement statute); *Coolman v. Robinson, supra* (one year residence required to obtain license to sell alcoholic beverages); *Shenfield v. Prather*, 387 F.Supp. 676 (N.D. Miss.1974) (residence requirement for bar applicants); *but see Nehring v. Ariyoshi*, 443 F.Supp. 228 (D.Hawaii 1977) (residency requirement for all public employment invalid; statute served no compelling state interest and had no rational basis). Because the right involved in the instant case, employment in a particular occupation, is not a fundamental one, the burden imposed by the residency requirement on the right to travel must be analyzed under the rational basis standard.

■ Under the rational basis test a legislative act is upheld if it is rationally related

to the furtherance of a legitimate state objective. *See Vance v. Bradley*, 440 U.S. 93, 99 S.Ct. 939, 59 L.Ed.2d 171 (1979). Plaintiffs argue that there is no reason why the City needs a year to determine whether drivers are qualified to get their permits. Defendants claim that the objective of the Ordinance is to provide safe and efficient taxi service for the citizens of Atlanta and visitors to the City. Defendants assert that the residency requirement was adopted in response to passenger complaints that because many taxi drivers were not familiar with the City's streets, they were unable to take the most direct routes, and that some drivers did not have sufficient command of the English language to communicate with passengers. The residency requirement, they contend, was designed to provide drivers the opportunity to become familiar with the City streets and to learn English if they do not have sufficient conversation skills to communicate with the public. The requirement is also defended as a means to insure passenger safety by allowing the City time to check past criminal records of driver applicants and by providing a local address so that local police records can be checked.

■■■ Public safety and efficient service are legitimate state interests for the City to pursue. While the means specified in the Ordinance to achieve these objectives may not be the ones this court would have chosen, they are not irrational. The fact that the City chose not to establish a shorter residence period to make its background criminal investigations, does not mean that the objectives of safe and efficient taxi service for the public were not furthered by the residency requirement. It has been long settled that where "legislative action is within the scope of the police power, fairly debatable questions as to its reasonableness, wisdom, and propriety are not for the determination of courts, but for that of the legislative body on which rests the duty and responsibility of decision." *Standard Oil Co. v. City of Marysville*, 279 U.S. 582, 584, 49 S.Ct. 430, 73 L.Ed. 856 (1929). Defendants' motion for summary judgment

on the residency requirement claim will be granted.

3. *Permit Application and Revocation Requirements*

The Ordinance specifies that certain criminal convictions within a five-year period preceding the application date shall automatically disqualify an applicant from obtaining a driver's permit. The Ordinance also includes provisions authorizing the Mayor to revoke or suspend any permit that has been issued upon a finding of due cause:

(a) Upon a finding of due cause, as hereinafter defined, the mayor shall have the authority to revoke or suspend any driver's permit which has been issued or which may hereafter be issued by the city.

. . . .

(d) The vehicles for hire appeals board shall conduct the hearings herein and report its conclusion and recommendations to the mayor. The mayor, upon receiving same, may revoke or suspend any driver's permit. In lieu of suspension or revocation hereunder, the mayor may impose a fine upon any driver, said fine not to exceed $500 for each violation.

Ordinance, § 14–8008. One of the items that constitutes "due cause" for revocation or suspension of a permit is conviction of one of the same criminal offenses that automatically prevents an applicant from obtaining such a permit.

Plaintiffs argue that the Ordinance treats convicted permit holders and convicted applicants disparately in violation of the Equal Protection Clause. They contend that the Ordinance language makes revocation of permits for criminal convictions discretionary while the same convictions automatically disqualify an applicant from obtaining a permit. Defendants argue that the Ordinance does not allow the Mayor any discretion in revoking permits for criminal convictions.

Regardless of whether it allows the Mayor a choice in deciding whether to take action against convicted permit holders, the

Ordinance on its face authorizes discretion in choosing what penalty to apply to these people. The Mayor may revoke the permit, suspend it, or impose a fine. When convicted persons apply for a permit the Mayor has no discretion. No options are available to mitigate the sanction in light of individual circumstances because the Ordinance dictates that criminal records automatically disqualify these people. Defendants have not advanced any state interest to justify this disparate treatment. Plaintiffs have also failed to discuss what significance these disciplinary alternatives for convicted permit holders have on their equal protection claims. The court is reluctant to rule on this equal protection issue until the parties have fully briefed the questions the court raises here. The parties are directed to submit briefs within fifteen (15) days of the date of entry of this order discussing the effect of these Ordinance provisions on the plaintiffs' equal protection arguments. Consideration of the summary judgment motions on this issue will be deferred until such information is received by the court.

Plaintiffs also challenge the Ordinance on the ground that the automatic disqualification provisions for permit applicants convicted of the specified offenses create an irrebuttable presumption that these applicants are unfit to drive taxis. Plaintiffs argue that the Ordinance provisions constitute a denial of due process because convicted applicants are not allowed an opportunity to rebut the negative inferences raised by the criminal records with evidence of their good character and fitness to operate a taxi. Defendants assert that the automatic disqualification provisions in the Ordinance are reasonable means to achieve the City's objective of safe taxi service for the public and that a heavy administrative burden would be imposed on the City and much time would be expended hearing the claims of unqualified applicants if hearings were required for all convicted applicants.

■ When statutory presumptions are challenged on such grounds, courts consider whether the classification created is justified in light of the administrative burdens and the interests at stake. *See, e.g., Weinberger v. Salfi,* 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975). The court finds that the defendants have not established that the administrative burden that would be imposed if hearings were required for convicted applicants justifies the classification system in the Ordinance.

Defendants' administrative burden argument is undercut by the fact that the Ordinance requires that hearings be given to any permit holder convicted of these same offenses before any sanctions are imposed. *See* Ordinance, § 14–8008(c). Defendants have presented no evidence to support their conclusory statements that providing similar hearings for applicants with criminal records would add substantially to the administrative workload. The court cannot determine from the record the extent of the burden that would be imposed if hearings were provided for convicted applicants. The court directs the defendants to present arguments and evidence within fifteen days of the date of entry of this order to support their allegations that providing hearings for convicted applicants would unduly burden the administrative process prescribed by the Ordinance for convicted permit holders. Consideration of the summary judgment motions on this issue will be deferred until such information is received by the court.

### 4. *Freedom of Association*

Plaintiffs argue that the Ordinance provisions that require all drivers to be affiliated with a taxi company to receive driver's permits and CPNCs and that require all taxi companies formed after the effective date of the Ordinance to own or lease at least 25 vehicles violate their rights of freedom of association under the first amendment. *See* Ordinance, §§ 14–8005(c)(8), 14–8003(e)(4), 14–8006(d)(11).

In the original complaint, plaintiff Tucker asserted his desire to operate a one-man taxi company. Tucker has since received permission to operate, and does operate a taxi company in Atlanta. *See* Affidavit of

Tucker, dated June 12, 1981; Plaintiffs' First Amended Complaint filed June 15, 1981. There is no explanation of how Tucker qualified to receive a company permit. In an affidavit dated January 5, 1982, plaintiff Jones declares his desire to operate a one-man taxi company but states that to apply for such a permit would be futile in light of the Ordinance requirement of a minimum of 25 vehicles per company. Because the court does not know under what circumstances Tucker was allowed to operate a taxi company, there remain questions of fact as to. how these challenged Ordinance provisions are applied and whether they infringe on the plaintiffs' rights of freedom of association. The parties are directed to submit briefs and other information· explaining how plaintiff Tucker received his permit and how these challenged sections are being applied and enforced generally. Consideration of this claim will be deferred until such information is received by the court.

Accordingly, the defendants' motion for summary judgment is GRANTED IN PART AND DEFERRED IN PART as set forth in this order. Summary judgment is GRANTED for the defendants on the plaintiffs' claims based on the commerce clause and the right to travel. The court will DEFER consideration of the plaintiffs' claims based on the equal protection and due process guarantees and on the first amendment freedom of association rights. The parties are DIRECTED to submit briefs and other information addressing the equal protection and due process questions raised above and the operation of the Ordinance provisions alleged to infringe freedom of association rights as described above. The parties are ALLOWED fifteen (15) days from the date of entry of this order in which to submit such information. Consideration of the motions for summary judgment on these issues will be DEFERRED until such time.

IT IS SO ORDERED.

## ON REMAINING CLAIMS

Plaintiffs filed this civil rights action, 42 U.S.C. § 1983, alleging that the Vehicles for Hire Ordinance (the Ordinance) adopted by the City of Atlanta, Georgia (City), violates federal and state law. On August 10, 1983, this court entered an order granting in part and deferring in part the defendants' motion for summary judgment. The court directed the parties to submit additional briefs on the two remaining claims in the action. On December 5, 1983, the court requested that the parties file a status report discussing recent amendments to the Ordinance. The parties have complied with the court's directives and the court will now consider the remaining claims in the pending summary judgment motion.

1. *Permit Application and Revocation Requirements*

■ Plaintiffs argue that the taxicab drivers with permits who are convicted of certain crimes are treated differently under the terms of the Ordinance than permit applicants who have been convicted of the same crimes. Plaintiffs assert that the mayor has discretion in determining what, if any, disciplinary action to take against taxicab drivers convicted of specific crimes but that no such discretion exists when persons convicted of the same crimes apply for permits, because the convictions disqualify the latter from receiving permits. Defendants maintain that discretion does exist to issue permits to applicants with records of these convictions. Because there is discretion to determine the permit status of both applicants and permit holders, the defendants argue, the Ordinance does not treat these two groups of people differently.

The court finds that applicants and permit holders with criminal convictions are treated equally under the Ordinance. Section 14–6002 sets forth the rules to be applied to convicted applicants seeking driver permits and it provides that criminal convictions shall not automatically disqualify an applicant. Section 14–8007 which governs the issuance of driver permits was amended on December 19, 1983, to specifically refer to section 14–6002. *See* Status Report, Exh. B, sec. 1 at 2–3. Section 14–8008, which concerns suspension and revocation of driver permits, must also be read in conjunction with Section 14–6002.

Having examined these provisions of the Ordinance, the court concludes that applicants and permit holders with criminal convictions are treated equally under the Ordinance. Summary judgment will be entered for the defendants on this claim.

II. *Freedom of Association*

■ Plaintiffs argue that the Ordinance provisions that require all drivers to be affiliated with a taxicab company to receive driver's permits and CPNCs, and that require all taxicab companies formed after the effective date of the Ordinance to own or lease at least 25 vehicles violate their rights of freedom of association under the first amendment.

Defendants maintain that no first amendment rights are violated by these requirements. Defendants emphasize that the Ordinance provides several alternatives to the plaintiffs in that the plaintiffs can seek to associate with any of the more than thirty taxicab companies already operating or they can form new companies that meet the minimum size requirement. In addition, the defendants argue that these challenged provisions further legitimate governmental interests of the City. Defendants contend that the drivers need to be associated with companies because the companies are the conduits through which the City inspects, inventories, and regulates the taxicab industry operations. It is easier for the City to locate and contact specific drivers through their companies than it would be if each driver were operating autonomously. Companies are required to operate a certain number of hours a day from a permanent location, be accessible by telephone, maintain records for inspection, and provide parking facilities for their taxicabs. Defendants argue that regulation of the taxicab industry would be "impossible" if the drivers were not affiliated with companies. The twenty-five vehicle minimum for taxicab companies is also defended as a reasonable regulatory requirement in that the number of companies is kept to a manageable number and the affiliation aides in the identification of individual vehicles and drivers. The Ordinance provision requiring uniform colors for all taxicabs in a specific company is also argued to aid in the identification process. The court finds that these Ordinance requirements serve legitimate governmental interests in that they facilitate the City's regulation of the taxicab industry.

Plaintiffs have not cited, and the court has not found, any case discussing freedom of association in a commercial context similar to the circumstances in this case. Although plaintiffs have asserted that one of the plaintiffs wants to operate as a one-man taxicab company, they have provided virtually no argument for or explanation of the right they seek to invoke.

Accordingly, the defendant's motion for summary judgment is GRANTED. Because there are no remaining issues in this action, this order terminates this case in its entirety.